OPINION
{¶ 1} Defendant-appellant Nima Firouzmandi appeals from the Licking County Court of Common Pleas decision sentencing him to consecutive sentences upon his pleas to one count of Involuntary Manslaughter, a felony of the first degree in violation of R.C.2903.04, one count of Aggravated Robbery, a felony of the first degree in violation of R.C. 2911.01, and one count of Felonious Assault, a felony of the second degree in violation of R.C.2903.11. Appellant also entered a guilty plea to a three year firearm specification under R.C. 2929.14(D) and R.C. 2941.145. The plaintiff-appellee is the State of Ohio. The following facts are relevant to this appeal.
 {¶ 2} On April 4th, 2005, the appellant went to the home of David and Jennifer Lynn located on Marne Road just outside of the city limits of Newark, in Licking County, Ohio. The appellant went there accompanied by two other individuals, one being Vincent Williams. (Transcript, Change of Plea, January 11, 2006 at 15). [Hereinafter "PT."].
 {¶ 3} The parties conducted negotiations over the sale by Mr. Lynn to appellant of a quantity of marijuana.
 {¶ 4} After the negotiations had taken several minutes, several eyewitnesses stated to the police that appellant produced a gun and proceeded to rob or attempt to rob the Lynn's of the marijuana rather than paying for it. (Id.). The presentation of the gun by appellant prompted Mr. Lynn to pull a gun from his waistband. After the gun the appellant had was discharged, Mr. Lynn also discharged his gun. Mr. Lynn's gun caused the fatal shots to Vincent Williams and also injured appellant.
 {¶ 5} Appellant was indicted by a Licking County Grand Jury on July 1, 2005 and charged in a six count indictment with the following offenses: Murder, in violation of R.C. 2903.02(B); Aggravated Robbery, in violation of R.C. 2911.01(A)(1); Felonious Assault, in violation of R.C. 2903.11(A)(1) and/or (A)(2); Having Weapons while Under Disability, in violation of R.C. 2923.13
(A)(3); and Tampering with Evidence, in violation of R.C.2921.12(A)(1). Firearm Specifications were also included on the counts charged.
 {¶ 6} At his arraignment, Appellant entered not guilty pleas on all counts.
 {¶ 7} On January 11, 2006, Appellant withdrew his previously entered not guilty pleas and entered guilty pleas to the following offenses: the lesser included offense of Involuntary Manslaughter in violation of R.C. 2903.04, a felony of the first degree; Aggravated Robbery, in violation of R.C. 2911.01, a felony of the first degree; and Felonious Assault, in violation of R.C. 2903.11, a felony of the second degree. Appellant also entered a guilty plea to a three year firearm specification under R.C. 2929.14(D) and R.C. 2941.145.
 {¶ 8} After his guilty pleas, the trial court adjourned the proceedings, ordered a pre-sentence investigation report be prepared and scheduled sentencing at a later date to allow appellant sufficient time to have mitigation evidence developed and presented. (Id. at 21).
 {¶ 9} At sentencing, the court was provided with a pre-sentence report as well as a sixteen page psychological report of the appellant prepared on his behalf by a forensic psychologist. (Transcript, Sentencing, March 14, 2006 at 3-4). [Hereinafter "ST."]. The report indicated that appellant was deeply remorseful for his actions and had contemplated suicide because he was responsible for the death of his best friend. (Id. at 4-5).
 {¶ 10} In addition, the victim's mother, Vida Williams, appeared at sentencing and confirmed that appellant was a good friend of her son's. She recommended a lesser sentence for appellant. (ST. at 9). Appellant made a statement in elocution during which he apologized to Mr. and Mrs. Williams as follows: "I realize I made a terrible mistake. I would like to say to Mr. and Mrs. Williams, I am truly sorry for that horrible night. I lost a best friend. They lost a son. I'm nervous, your Honor. I'm sorry." (ST. at 7).
 {¶ 11} The trial court noted that Mr. Lynn had received a nine year sentence based upon the fact that he was only charged with one felony and one firearm specification, whereas appellant was charged with three felonies and three firearm specifications. (Id. at 10-11).
 {¶ 12} The court sentenced appellant to six years on the count of involuntary manslaughter; five years on the count of aggravated robbery; two years on the count of felonious assault and three years on the firearm specification. The trial court ordered all sentences to run consecutively for an aggregate sentence of sixteen-years.
 {¶ 13} It is from this sentence that appellant has filed this appeal raising the following assignments of error for our consideration:
 {¶ 14} "I. BY FAILING ARTICULATING [sic.] NO RATIONALE FOR THE SENTENCE IMPOSED, THE TRIAL COURT FAILED TO FOLLOW OHIO LAW THEREBY DEPRIVING APPELLANT OF HIS RIGHT TO EFFECTIVE AND MEANINGFUL APPELLATE REVIEW CONTRA OHIO LAW AS WELL AS THE OHIO AND FEDERAL CONSTITUTIONS (App. PP. 1-2).
 {¶ 15} "II. IF, IN THE ALTERNATIVE, THIS COURT DETERMINES THAT THE TRIAL COURT, UNDER FOSTER, NEED NOT SET FORTH ITS RATIONALE PRIOR TO SENTENCING A CRIMINAL DEFENDANT, THEN APPELLANT SUBMITS THAT THE FOSTER COURT VIOLATED THE DOCTRINE OF SEPARATION-OF-POWERS BY UNDERMINING AN APPELLATE COURTS OBLIGATION TO CONDUCT MEANINGFUL AND EFFECTIVE REVIEW OF FELONY SENTENCING CONTRA OHIO LAW AND THE STATE AND FEDERAL CONSTITUTIONS. (Sentencing Tr. App. PP. 1-2)."
 I. {¶ 16} At the outset we note, there is no constitutional right to an appellate review of a criminal sentence. Moffitt v.Ross (1974), 417 U.S. 600, 610-11, 94 S.Ct. 2437, 2444; McKanev. Durston (1894), 152 U.S. 684, 687, 14 S. Ct. 913, 917; Statev. Smith (1997), 80 Ohio St.3d 89, 1997-Ohio-355,684 N.E.2d 668. This proposition has been firmly established as noted by the Ohio Supreme Court: "[t]he United States Supreme Court inEstelle v. Dorrough (1975), 420 U.S. 534, 536, 95 S.Ct. 1173,1175, 43 L.Ed.2d 377, 380, held, `there is no federal constitutional right to state appellate review of state criminal convictions.' The Supreme Court has stated that `the right of appeal is not essential to due process, provided that due process has already been accorded in the tribunal of first instance.'State ex rel. Bryant v. Akron Metro. Park Dist. (1930),281 U.S. 74, 80, 50 S.Ct. 228, 230, 74 L.Ed. 710, 715. The United States Supreme Court laid out the rationale most clearly in Rossv. Moffitt (1974), 417 U.S. 600, 610-611, 94 S.Ct. 2437, 2444,41 L.Ed.2d 341, 351:
 {¶ 17} `The defendant needs an attorney on appeal not as a shield to protect him against being `haled into court' by the State and stripped of his presumption of innocence, but rather as a sword to upset the prior determination of guilt. This difference is significant for, while no one would agree that the State may simply dispense with the trial stage of proceedings without a criminal defendant's consent, it is clear that the State need not provide any appeal at all'". State v. Smith
(1997), 80 Ohio St.3d 89, 97-97, 1997-Ohio-355, 684 N.E.2d 668,680.
 {¶ 18} Although the Ohio Constitution does not expressly provide for a "right" to appeal, Article IV, Section 3(B)(1)(f) does provide for the establishment of an appellate court system. Section 2505.03 of the Ohio Revised Code further provides that: "[e]very final order, judgment, or decree of a court and, when provided by law, the final order of any administrative officer, agency, board, department, tribunal, commission, or other instrumentality, may be reviewed . . . unless otherwise provided by law." In addition, Rule 3(A) of the Ohio Rules of Appellate Procedure make every litigant entitled to "[a]n appeal as of right . . . by filing a notice of appeal . . . within the time allowed by Rule 4 . . ."
 {¶ 19} In Atkinson v. Grumman Ohio Corp. (1988),37 Ohio St. 3d 80, the Ohio Supreme Court interpreted Article IV, Section 3(B) (1) (f), Section 2505.03, and Rule 3(A), and concluded: "[b]y developing a process of appellate review, states provide litigants with a property interest in the right to appeal. Clearly, litigants cannot be deprived of this right without being granted due process of law". Id. at 85.
 {¶ 20} "While normal sentencing proceedings are not immune from all due process attacks, see Williams v. New York,337 U.S. 241, 252 n. 18, 69 S.Ct. 1079, 1085 n. 18, 93 L.Ed. 1337
(1949); Townsend v. Burke, 334 U.S. 736, 68 S.Ct. 1252,92 L.Ed. 1690 (1948), the Supreme Court has required only minimal due process protections in those proceedings. See United Statesv. Grayson, 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978); Williams v. New York, 337 U.S. 241, 69 S.Ct. 1079,93 L.Ed. 1337 (1949); see also Gardner v. Florida, 430 U.S. 349, 358 n. 9, 97 S.Ct. 1197, 1205 n. 9, 51 L.Ed.2d 393 (1977) (plurality opinion)". United State v. Davis (3rd Cir 1983), 710 F.2d 103, 106.
 {¶ 21} An individual has no substantive right to a particular sentence within the range authorized by statute. Gardner v.Florida (1977), 430 U.S. 349, 358, 97 S.Ct. 1197, 1204-1205. In other words "[t]he sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of habeas corpus. It is not the duration or severity of this sentence that renders it constitutionally invalid. . . ." Townsend v. Burke (1948), 334 U.S. 736, 741,68 S.Ct. 1252, 1255. However, "[t]he defendant has a legitimate interest in the character of the procedure which leads to the imposition of sentence even if he may have no right to object to a particular result of the sentencing process. See Witherspoonv. Illinois, 391 U.S. 510, 521-523, 88 S.Ct. 1770, 1776-1778,20 L.Ed.2d 776". Gardner v. Florida (1977), 430 U.S. 349, 358,97 S.Ct. 1197, 12041-205.
 {¶ 22} In Williams v. New York (1949), 337 U.S. 241,69 S.Ct. 1079, the United States Supreme Court noted that the Due Process Clause of the Fourteenth Amendment did not require a judge to have hearings and to give a convicted person an opportunity to participate in those hearings when he came to determine the sentence to be imposed. See, Spect v. Patterson
(1967), 386 U.S. 606, 606, 87 S.Ct. 1209, 1210. The Court explained this principal in Chapman v. United States (1991),500 U.S. 453, 111 S.Ct. 1919 as follows: "[e]very person has a fundamental right to liberty in the sense that the Government may not punish him unless and until it proves his guilt beyond a reasonable doubt at a criminal trial conducted in accordance with the relevant constitutional guarantees. Bell v. Wolfish,441 U.S. 520, 535, 536, and n. 16, 99 S.Ct. 1861, 1871, 1872, and n. 16 (1979). But a person who has been so convicted is eligible for, and the court may impose, whatever punishment is authorized by statute for his offense, so long as that penalty is not cruel and unusual, McMillan v. Pennsylvania, 477 U.S. 79, 92, n. 8,106 S.Ct. 2411, 2419, n. 8, 91 L.Ed.2d 67 (1986); Meachum v.Fano, 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451
(1976), and so long as the penalty is not based on an arbitrary distinction that would violate the Due Process Clause of theFifth Amendment. In this context, as we noted in Jones v.United States, 463 U.S. 354, 362, n. 10, 103 S.Ct. 3043, 3048, n. 10,77 L.Ed.2d 694 (1983), an argument based on equal protection essentially duplicates an argument based on due process". Id. at 465, 111 S.Ct. at 1927. (Emphasis in original).
 {¶ 23} The Courts have recognized the conundrum in determining what process is due a defendant at sentencing. In discussing the historical swing from a sentencing philosophy based upon incarceration as retribution for criminal behavior to a sentencing system encouraging reformation and rehabilitation of offenders, the Court in United States v. Grayson (1978),438 U.S. 41, 98 S.Ct. 2610 noted: "[i]ndeterminate sentencing under the rehabilitation model presented sentencing judges with a serious practical problem: how rationally to make the required predictions so as to avoid capricious and arbitrary sentences, which the newly conferred and broad discretion placed within the realm of possibility." Id. at 28, 98 S.Ct. at 2614.
 {¶ 24} The question before us on appeal is what quality of analysis and explanation, if any, is necessary where the court exercises its discretion to impose non-maximum, consecutive sentences.
 {¶ 25} As support for the proposition that the trial court must explain its decision when imposing a criminal sentence, the appellant cites several cases interpreting the Federal Sentencing Guidelines after the United States Supreme Court decision inUnited States v. Booker (2005), 534 U.S. 220, 125 S. Ct. 738.
 {¶ 26} In Booker the United States Supreme Court issued two separate majority opinions. First, Justice Stevens wrote for the Court and held that the rule announced in Blakely v. Washington
(2004) , 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 applied to the Guidelines. Booker, 125 S.Ct. at 745. He based his opinion on the premise that the Guidelines were mandatory and imposed binding requirements on all sentencing judges. Id. at 749. Second, and in light of Justice Stevens' holding, Justice Breyer wrote for the Court and invalidated two provisions of the Sentencing Reform Act of 1984 that had the effect of making the Guidelines mandatory. Id. at 756.
 {¶ 27} Appellant argues that the federal appellate courts have held that a district court must articulate sufficient reasoning for its sentence in order for the appeals court to give it meaningful review, even where the sentence is within the applicable Guidelines range. United States v. Foreman (6th Cir. 2006), 436 F.3d 638, 644; United States v. Richardson (6th Cir. 2006), 437 F.3d 550, 554. However, the federal cases are distinguishable.
 {¶ 28} In Booker, supra, the United States Supreme Court explicitly set forth the standard of appellate review for cases arising subsequent to the Court's decision. After excising the portions of the Federal Sentencing Guidelines that sets forth standards of review on appeal, including de novo review of departures from the applicable Guidelines range, the Court held that "[t]he courts of appeals review sentencing decisions for unreasonableness." 125 S. Ct. at 767. The United States Supreme Court found that the sentencing factors analogous to R.C. 2929.11
and R.C. 2929.12 "will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable." Id. at 766. It should be noted that the Federal Sentencing Guidelines expressly require the trial court to set forth its reasons for imposing a particular sentence. 18 U.S.C. 3553(c).
 {¶ 29} However, under Ohio law, judicial fact-finding is no longer required before a court imposes consecutive or maximum prison terms. See State v. Foster, 109 Ohio St.3d 1,845 N.E.2d 470, 2006-Ohio-856; State v. Mathis, 109 Ohio St.3d 54,846 N.E.2d 1, 2006-Ohio-855. Instead, the trial court is vested with discretion to impose a prison term within the statutory range. See Mathis, at ¶ 36. In exercising its discretion, the trial court must "carefully consider the statutes that apply to every felony case [including] R.C. 2929.11, which specifies the purposes of sentencing, and R.C. 2929.12, which provides guidance in considering factors relating to the seriousness of the offense and recidivism of the offender [and] statutes that are specific to the case itself." Id. at ¶ 37. Thus, post-Foster, "there is no mandate for judicial fact-finding in the general guidance statutes. The court is merely to `consider' the statutory factors." Foster at ¶ 42. State v. Rutter, 5th Dist. No. 2006-CA-0025, 2006-Ohio-4061; State v. Delong, 4th Dist. No. 05CA815, 2006-Ohio-2753 at ¶ 7-8. Therefore, post-Foster,
trial courts are still required to consider the general guidance factors in their sentencing decisions.
 {¶ 30} Appellant was convicted of felonies of the first and second degree. Therefore, R.C. 2929.13(D) applies to the case at bar, and provides:
 {¶ 31} "(D) Except as provided in division (E) or (F) of this section, for a felony of the first or second degree and for a felony drug offense that is a violation of any provision of Chapter 2925., 3719., or 4729, of the Revised Code for which a presumption in favor of a prison term is specified as being applicable, it is presumed that a prison term is necessary inorder to comply with the purposes and principles of sentencingunder section 2929.11 of the Revised Code. Notwithstanding the presumption established under this division, the sentencing court may impose a community control sanction or a combination of community control sanctions instead of a prison term on an offender for a felony of the first or second degree or for a felony drug offense that is a violation of any provision of Chapter 2925., 3719., or 4729. of the Revised Code for which a presumption in favor of a prison term is specified as being applicable if it makes both of the following findings:
 {¶ 32} "(1) A community control sanction or a combination of community control sanctions would adequately punish the offender and protect the public from future crime, because the applicable factors under section 2929.12 of the Revised Code indicating a lesser likelihood of recidivism outweigh the applicable factors under that section indicating a greater likelihood of recidivism.
 {¶ 33} "(2) A community control sanction or a combination of community control sanctions would not demean the seriousness of the offense, because one or more factors under section 2929.12 of the Revised Code that indicate that the offender's conduct was less serious than conduct normally constituting the offense are applicable, and they outweigh the applicable factors under that section that indicate that the offender's conduct was more serious than conduct normally constituting the offense." (Emphasis added).
 {¶ 34} Thus, in order for a trial court to overcome the presumption of imprisonment and impose a community control sanction for a felony of the first or second degree the trial court would be required to find that such a sanction would adequately punish the offender, that the offender is less likely to re-offend, and that such a sanction would not demean the seriousness of the offense, because the offender's conduct was less serious than conduct normally constituting the offense.State v. Rutter, supra.
 {¶ 35} Pursuant to the express language of R.C. 2929.13(D), the court need not make any findings of fact concerning the purposes and principles of sentencing under section 2929.11 of the Revised Code when sentencing an offender for a felony of the first or second degree because the legislature has determined that a prison term is necessary to comply with the purposes and principles of sentencing. The statute requires findings of fact only when the trial court overcomes the presumption of imprisonment and sentences the offender to community control sanctions. See, State v. Mathis, 109 Ohio St.3d 54,846 N.E.2d 1, 2006-Ohio-855 at ¶ 27. ("Judicial findings must be provided only for downward departures, such as when a court refuses to impose the presumptive prison term under R.C. 2929.13(D) or when a court grants a judicial release. See R.C. 2929.20(H)").
 {¶ 36} There is no requirement in R.C. 2929.12 that the trial court states on the record that it has considered the statutory criteria concerning seriousness and recidivism or even discussed them. State v. Polick (1995), 101 Ohio App.3d 428, 431; Statev. Gant, Mahoning App. No. 04 MA 252, 2006-Ohio-1469, at ¶ 60
(nothing in R.C. 2929.12 or the decisions of the Ohio Supreme Court imposes any duty on the trial court to set forth its findings), citing State v. Cyrus (1992), 63 Ohio St.3d 164,166; State v. Hughes, Wood App. No. WD-05-024, 2005-Ohio-6405, at ¶ 10 (trial court was not required to address each R.C.2929.12 factor individually and make a finding as to whether it was applicable in this case), State v. Woods, 5th Dist. No. 05 CA 46, 2006-Ohio-1342 at ¶ 19 (". . . R.C. 2929.12 does not require specific language or specific findings on the record in order to show that the trial court considered the applicable seriousness and recidivism factors"). (Citations omitted).
 {¶ 37} However, Foster did modify an appellate court's standard of review concerning sentencing. Pre-Foster, an appellate court could increase, reduce, modify or vacate and remand a sentence if it found, by clear and convincing evidence, that the record did not support the trial court's findings of fact or that the sentence was otherwise contrary to law. R.C.2953.08(G) (2). The Foster Court's removal of R.C.2953.08(G)(2) from the statutory sentencing scheme eliminated the clear and convincing standard and left a void concerning the applicable standard of review in sentencing matters. State v.Windham, 9th Dist. No. 05CA0033, 2006-Ohio-1544 at ¶ 11.
 {¶ 38} Before passage of Am. Sub. S.B. No. 2, 146 Ohio Laws, Part IV, 7136, effective July 1, 1996 ("S.B. 2"), Ohio had a predominantly indeterminate felony-sentencing structure in which a sentence was expressed in the form of a minimum and maximum prison term with the release decision in the hands of a parole board. Foster supra 109 Ohio St.3d at 12, 845 N.E.2d at 484,2006-Ohio-856 at ¶ 34. Under that structure the Ohio Supreme Court noted "[t]his court has held that: `A silent record raises the presumption that a trial court considered the factors contained in R.C. 2929.12.' State v. Adams (1988),37 Ohio St.3d 295, 525 N.E.2d 1361, paragraph three of the syllabus; accord State v. O'Dell (1989), 45 Ohio St.3d 140, 147,543 N.E.2d 1220, 1227. Nothing in the statute or the decisions of this court imposes any duty on the trial court to set forth its reasoning. The burden is on the defendant to come forward with evidence to rebut the presumption that the trial court considered the sentencing criteria." State v. Cyrus (1992),63 Ohio St.3d 164, 166, 586 N.E.2d 94, 95-96.
 {¶ 39} R.C. 2929.41 gives the trial court discretion to specify that a sentence shall be served consecutively to another sentence. R.C. 2929.41(1); State v. White (1985),18 Ohio St.3d 340, 342; State v. Elam (1994), 68 Ohio St.3d 585, 586.
 {¶ 40} Prior to the passage of S.B. 2 it was well settled that the decision whether a criminal defendant is to serve the sentences for all his crimes consecutively or concurrently is a matter committed to the sound discretion of the trial court.State v. Johnson (1988), 40 Ohio St.3d 130, 133-134,532 N.E.2d 1295, certiorari denied (1989), 489 U.S. 1098, 109 S.Ct. 1574,103 L.Ed.2d 940; State v. White (1985), 18 Ohio St.3d 340, 342,481 N.E.2d 596; State v. Moss (1982), 69 Ohio St.2d 515, 518,433 N.E.2d 181, certiorari denied (1983), 459 U.S. 1200,103 S.Ct. 1183, 75 L.Ed.2d 430. Therefore, we conclude that post-Foster, this Court reviews the imposition of consecutive sentences under an abuse of discretion standard. Furthermore, when applying the abuse of discretion standard, an appellate court may not generally substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619, 621.
 {¶ 41} In the case at bar, the sentencing procedure which led to the imposition of appellant's sentence satisfied the due process protections of the Ohio and United States Constitutions.
 {¶ 42} After accepting appellant's pleas of guilty, the trial court ordered a pre-sentence investigation report. (PT. at 21-22). The trial court further permitted the appellant to present mitigation evidence. (Id.; ST. at 3). The Court informed the appellant that it had reviewed the pre-sentence investigation report. (ST. at 3). The court permitted appellant's trial counsel to make a lengthy argument for mitigation of appellant's sentence. (Id. at 3-7). The trial court further permitted appellant to address the court. (Id. at 7). The victim's mother was also allowed to address the court concerning sentencing. (Id. at 8-10). The court discussed with counsel the fact that appellant could be sentenced on only one of the three firearm specifications for which he had been indicted. (Id. at 11). The court distinguished appellant's case from that of a co-defendant's sentence on the basis that the co-defendant was charged with only one offense and one firearm specification; however appellant had three felony charges and three firearm specifications. (Id. at 10-11). The trial court specifically noted both on the record and in its sentencing entry that it had considered the purposes and principles of sentencing set out under Section 2929.11 of the Revised Code, as well as the seriousness and recidivism factors under R.C. 2929.12. (Id. at 10). The record in the case at bar contains numerous police reports and witness statements concerning the underlying criminal offenses and appellant's previous involvement with the criminal justice system.
 {¶ 43} We find nothing in the record of appellant's case to suggest that his sentence was based on an arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment. We note that we do not know the specific contents of the pre-sentence investigation report, any of the victim impact statements, or the psychological report submitted by appellant as appellant did not make them a part of the record. In State v.Untied (Mar. 5, 1998), Muskingum App. No. CT97-0018, we addressed the issue of failure to include the pre-sentence investigation report and stated: "Appellate review contemplates that the entire record be presented. App.R. 9. When portions of the transcript necessary to resolve issues are not part of the record, we must presume regularity in the trial court proceedings and affirm. Knapp v. Edwards Laboratories (1980),61 Ohio St.2d 197, 400 N.E.2d 384. The pre-sentence investigation report could have been submitted "under seal" for our review. "Without the cited information and given the trial court (sic) findings on the record, we cannot say appellant's sentence was against the manifest weight of the evidence or `contrary to law." Id. at 7. It is the duty of counsel to ensure that all documents and reports are made a part of the trial court record and are actually transmitted to this Court.
 {¶ 44} It appears to this Court that the trial court's statements at the sentencing hearing were guided by the overriding purposes of felony sentencing to protect the public from future crime by the offender and others and to punish the offender. R.C. 2929.11. Based on the transcript of the sentencing hearing and the subsequent judgment entry, this Court cannot find that the trial court acted unreasonably, arbitrarily, or unconscionably, or that the trial court violated appellant's rights to due process under the Ohio and United States Constitutions in its sentencing appellant to consecutive sentences of incarceration.
 {¶ 45} Appellant's first assignment of error is overruled.
 II. {¶ 46} In his second assignment of error appellant argues that the Ohio Supreme Court's decision in Foster violates the doctrine of separation of powers and undermines an appellate courts obligation to conduct a meaningful and effective review of felony sentencing. We disagree.
 {¶ 47} The appellant failed to make this objection before the trial court in a timely manner. Such an objection should first be raised before the trial court in order to provide the trial court the opportunity to correct or avoid the alleged error. State v.McKee (2001), 91 Ohio St.3d 292; State v. Williams (1977),51 Ohio St.3d 112. Absent plain error, the issue is waived. Statev. Carter (2000), 89 Ohio St.3d 593; State v. Moreland (1990),50 Ohio St.3d 58. No plain error exists in the matter now before us.
 {¶ 48} In State ex rel. Bray v. Russell (2000),89 Ohio St.3d 132, 729 N.E.2d 359 the Ohio Supreme Court explained the doctrine of separation of powers: "[t]his court has repeatedly affirmed that the doctrine of separation of powers is `implicitly embedded in the entire framework of those sections of the Ohio Constitution that define the substance and scope of powers granted to the three branches of state government.' S. Euclid v.Jemison (1986), 28 Ohio St.3d 157, 158-159, 28 OBR 250, 251,503 N.E.2d 136, 138; State v. Warner (1990), 55 Ohio St.3d 31,43-44, 564 N.E.2d 18, 31. See State ex rel. Ohio Academy ofTrial Lawyers v. Sheward (1999), 86 Ohio St.3d 451, 475,715 N.E.2d 1062, 1085; State v. Hochhausler (1996),76 Ohio St.3d 455, 463, 668 N.E.2d 457, 465-466.
 {¶ 49} "`The essential principle underlying the policy of the division of powers of government into three departments is that powers properly belonging to one of the departments ought not to be directly and completely administered by either of the other departments, and further that none of them ought to possess directly or indirectly an overruling influence over the others.'State ex rel. Bryant v. Akron Metro. Park Dist. (1929),120 Ohio St. 464, 473, 166 N.E. 407, 410. See, also, Knapp v.Thomas (1883), 39 Ohio St. 377, 391-392; State ex rel. Finleyv. Pfeiffer (1955), 163 Ohio St. 149, 56 O.O. 190,126 N.E.2d 57, paragraph one of the syllabus." Id. at 134, 729 N.E.2d 361.
 {¶ 50} In our constitutional scheme, the judicial power resides in the judicial branch. Section 1, Article IV of the Ohio Constitution. The determination of guilt in a criminal matter and the sentencing of a defendant convicted of a crime are solely the province of the judiciary. See State ex rel. Atty. Gen. v.Peters (1885), 43 Ohio St. 629, 648, 4 N.E. 81, 86. See, also,Stanton v. Tax Comm. (1926), 114 Ohio St. 658, 672,151 N.E. 760, 764 ("the primary functions of the judiciary are to declare what the law is and to determine the rights of parties conformably thereto"); Fairview v. Giffee (1905),73 Ohio St. 183, 190, 76 N.E. 865, 867 ("It is indisputable that it is a judicial function to hear and determine a controversy between adverse parties, to ascertain the facts, and, applying the law to the facts, to render a final judgment.").
 {¶ 51} Section 3(B) (2), Article IV of the Ohio Constitution and R.C. 2953.07, give an appellate court the power to affirm, reverse, or modify the judgment of an inferior court. R.C.2953.07 specifically provides that "[t]he appellate court may remand the accused for the sole purpose of correcting a sentence imposed contrary to law. . . ."
 {¶ 52} Where the record lacks sufficient data to justify the sentence, the court may well abuse its discretion by imposing that sentence without a suitable explanation. Where the record adequately justifies the sentence imposed, the court need not recite its reasons. State v. Middleton (Jan. 15, 1987), 8th
Dist. No. 51545. In other words, an appellate court may review the record to determine whether the trial court failed to consider the appropriate sentencing factors.
 {¶ 53} Appellant's contention that the failure of a trial court to set forth facts in support of its sentencing decision denies him a meaningful appellate review is unfounded.
 {¶ 54} As we noted in our disposition of appellant's first assignment of error, we apply an abuse of discretion standard to appeals challenging the trial court's imposition of sentence. This term however has been applied in a somewhat rote manner by the courts without analysis of the true purpose of the appellate court's role in the review of a trial court's discretionary powers. An excellent analysis of the misconception surrounding the concept of "abuse of discretion" was set forth by the Arizona Supreme Court sitting en banc: "[t]he phrase `within the discretion of the trial court' is often used but the reason for that phrase being applied to certain issues is seldom examined. One of the primary reasons an issue is considered discretionary is that its resolution is based on factors which vary from case to case and which involve the balance of conflicting facts and equitable considerations. Walsh v. Centeio, 692 F.2d 1239, 1242
(9th Cir. 1982). Thus, the phrase `within the discretion of the trial court' does not mean that the court is free to reach any conclusion it wishes. It does mean that where there are opposing equitable or factual considerations, we will not substitute our judgment for that of the trial court". State v. Chapple (1983),135 Ariz. 281, 296-97, 660 P.2d 1208, 12232-4. However, the Court explained, "[t]he term `abuse of discretion' is unfortunate. In ordinary language, `abuse' implies some form of corrupt practice, deceit or impropriety. Webster's Third New International Dictionary (1976). In this sense, the application of the word to the act of a trial judge who ruled in accordance with all the decided cases on the issue is inappropriate. However, in the legal context, the word `abuse' in the phrase `abuse of discretion' has been given a broader meaning. In the few cases that have attempted an analysis, the ordinary meaning of the word has been considered inappropriate and the phrase as a whole has been interpreted to apply where the reasons given by the court for its action are clearly untenable, legally incorrect, or amount to a denial of justice. State ex rel. Fletcher v.District Court of Jefferson County, 213 Iowa 822, 831,238 N.W. 290, 294 (1931). Similarly, a discretionary act which reaches an end or purpose not justified by, and clearly against, reason and evidence `is an abuse.' Kinnear v. Dennis, 97 Okl. 206, 207,223 P. 383, 384 (1924).
 {¶ 55} "The law would be better served if we were to apply a different term, but since most appellate judges suffer from misocainea, we will no doubt continue to use the phrase `abuse of discretion.' Therefore, we should keep some operative principles in mind. Something is discretionary because it is based on an assessment of conflicting procedural, factual or equitable considerations which vary from case to case and which can be better determined or resolved by the trial judge, who has a more immediate grasp of all the facts of the case, an opportunity to see the parties, lawyers and witnesses, and who can better assess the impact of what occurs before him. Walsh v. Centeio, supra.
Where a decision is made on that basis, it is truly discretionary and we will not substitute our judgment for that of the trial judge; we will not second-guess. Where, however, the facts or inferences from them are not in dispute and where there are few or no conflicting procedural, factual or equitable considerations, the resolution of the question is one of law or logic. Then it is our final responsibility to determine law and policy and it becomes our duty to `look over the shoulder' of the trial judge and, if appropriate, substitute our judgment for his or hers. This process is sometimes, unfortunately, described as a determination that the trial judge has `abused his discretion . . .'" Id. at n. 8; State v. Garza (1998), 192 Ariz. 171,175-76, 962 P.2d 898, 902.
 {¶ 56} Accordingly, appellate courts can find an "abuse of discretion" where the record establishes that a trial judge refused or failed to consider statutory sentencing factors.Cincinnati v. Clardy (1978), 57 Ohio App.2d 153,385 N.E.2d 1342. An "abuse of discretion" has also been found where a sentence is greatly excessive under traditional concepts of justice or is manifestly disproportionate to the crime or the defendant. Woosley v. United States (1973), 478 F.2d 139, 147. The imposition by a trial judge of a sentence on a mechanical, predetermined or policy basis is subject to review. Woosley,
supra at 143-145. Where the severity of the sentence shocks the judicial conscience or greatly exceeds penalties usually exacted for similar offenses or defendants, and the record fails to justify and the trial court fails to explain the imposition of the sentence, the appellate court's can reverse the sentence.Woosley, supra at 147. This by no means is an exhaustive or exclusive list of the circumstances under which an appellate court may find that the trial court abused its discretion in the imposition of sentence in a particular case. However these examples demonstrate that appellant's right to a meaningful appellate review have not been impeded by the decision inFoster. Accordingly, nothing in the Foster decision prevents an appellate court from conducting an effective and meaningful appellate review of the final judgments, orders or sentences of inferior courts.
 {¶ 57} Both the United States Supreme Court and the Supreme Court of Ohio found that the particular mechanism that the legislature chose in an attempt to guide judicial discretion in sentencing was constitutionally infirm. Nothing in the Foster
or Booker decisions prevent the legislature from enacting provisions which comply with the respective constitutional safeguards. "Ours, of course, is not the last word: The ball now lies in Congress' court. The National Legislature is equipped to devise and install, long-term, the sentencing system, compatible with the Constitution, that Congress judges best for the federal system of justice." Booker, supra 125 S.Ct. at 768.
 {¶ 58} As we noted in our disposition of appellant's first assignment of error, there is no evidence in the record that the judge acted unreasonably by, for example, selecting the sentence arbitrarily, basing the sentence on impermissible factors, failing to consider pertinent factors, or giving an unreasonable amount of weight to any pertinent factor.
 {¶ 59} Appellant's second assignment of error is overruled.
 {¶ 60} The judgment of the Licking County Court of Common Pleas is affirmed.
Gwin, P.J., Hoffman, J., and Farmer, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Licking County Court of Common Pleas is affirmed. Costs to appellant.