OPINION *Page 2 
{¶ 1} Defendant-appellant Timothy L. Snyder appeals from his convictions and sentences in the Licking County Court of Common Pleas on two counts of theft by deception from an elderly person, felonies of the second degree in violation of R.C. 2913.02(A) (3) and (B) (3), one count of misuse of a credit card, a third degree felony in violation of R.C. 2913.21(B)(2), one count of grand theft by deception from an elderly person, a felony of the fourth degree in violation of R.C. 2913.02(A) (2) and (A) (3), and one count of theft by deception from an elderly person, a felony of the fourth degree in violation of R.C. 2913.02(A) (3). The plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE[1] {¶ 2} Appellant is a contractor. Most of his clients are elderly. He met seventy-five year old Mildred Stahl in May 2004. Appellant handled an insurance repair claim for the repair of the roof of Mr. and Ms. Stahl's mobile home. After the death of her husband, appellant began assisting Ms. Stahl with errands and small jobs around her home. They opened a joint savings account into which she deposited life insurance proceeds from the death of her husband. Appellant cut Ms. Stahl's grass and drove her to appointments.
 {¶ 3} During a one-year period between March 2004 and November 2005, appellant received nearly $56,000.00 from Mildred Stahl. The State presented evidence that appellant received money for work he did not perform. Appellant contended that the majority of the money was given to him by Ms. Stahl as loans and gifts. *Page 3 
 {¶ 4} Appellant met seventy-three year old James Bauer in 2004 when appellant sealed the roof of Mr. Bauer's mobile home. Mr. Bauer hired appellant to do other work on his home, including work on the exterior and interior. The interior work was to include new cabinets in the kitchen and wallpaper. During a two-year period between May 2004 and August 2006, appellant received nearly $36,000.00 from Mr. Bauer. Appellant additionally utilized cash advances, purchases and a check to obtain an additional $3,000.00 from Mr. Bauer's credit card. Appellant asserted that he received money as loans and cash advances for work he was going to do for Mr. Bauer. Appellant did not replace the storm door, or skirting around Mr. Bauer's trailer. Kitchen cabinets that appellant had promised were produced only after appellant was indicted. The cabinets finally provided to Mr. Bauer were not the correct size. After indictment, while on bond and with the specific term that he have no contact with Mr. Bauer, appellant obtained $3,400.00 from Mr. Bauer in the form of cash advances. Appellant did put two coats of rubber sealant on the roof of Mr. Bauer's mobile home.
 {¶ 5} Appellant first met Stephen McClellan in the year 2000 when appellant was going around Mr. McClellan's mobile home park asking for work. During a nine month period between January 2006 and September 2006, appellant received nearly $26,000.00 from Mr. McClellan. Appellant did not replace Mr. McClellan's roof or perform any other repair work as promised. Mr. McClellan hired another contractor at a price of $4,800.00 to replace the roof on his mobile home.
 {¶ 6} Appellant was indicted in three cases for the theft offenses. Case 06 CR 494 involved Mildred Stahl and James Bauer, and involved three counts. Two of the *Page 4 
counts concerned theft by deception from an elderly person, Ms. Stahl and Mr. Bauer. The third count concerned misuse of Mr. Bauer's credit card.
 {¶ 7} Case number 06 CR 553 involved one count of grand theft by deception from an elderly person, Stephen McClellan.
 {¶ 8} Case number 07 CR 363 involved one count of theft by deception from an elderly person, James Bauer.
 {¶ 9} The cases were tried together. Appellant was found guilty on each count by the jury. Appellant was sentenced to five years on each count of theft by deception from an elderly person. These sentences were ordered to be served consecutively. For misuse of a credit card, the trial court ordered appellant to serve a term of three years. However, this sentence was merged with Count Two and ordered to run concurrently to the sentences for two counts of theft by deception from an elderly person.
 {¶ 10} For one count of grand theft by deception from an elderly person, a felony of the fourth degree, appellant was ordered to serve a term of twelve months. This sentence was ordered to run consecutive to the other sentences.
 {¶ 11} Finally, for one count of grand theft by deception from an elderly person a felony of the fourth degree appellant was ordered to serve a term of twelve months. This sentence was ordered to run consecutive to the other sentences.
 {¶ 12} Accordingly appellant's aggregate prison sentence totals twelve years.
 {¶ 13} Appellant has timely appealed raising the following two assignments of error:
 {¶ 14} "I. THE JURY ERRONEOUSLY CONCLUDED THAT APPELLANT TIMOTHY L. SNYDER (SNYDER) WAS GUILTY OF THE OFFENSES CHARGED. *Page 5 
 {¶ 15} "II. THE TRIAL COURT ERRED AS A MATTER OF LAW IN IMPOSING CONSECUTIVE SENTENCES ON SNYDER."
 I. {¶ 16} In his first assignment of error, appellant maintains that his conviction is against the manifest weight of the evidence.[2] We disagree.
 {¶ 17} Weight of the evidence addresses the evidence's effect of inducing belief. State v. Wilson, 713 Ohio St.3d 382, 387-88,2007-Ohio-2202 at ¶ 25-26; 865 N.E.2d 1264, 1269-1270. "In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's? Even though there may be sufficient evidence to support a conviction, a reviewing court can still reweigh the evidence and reverse a lower court's holdings." State v. Wilson, supra. However, an appellate court may not merely substitute its view for that of the jury, but must find that "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins, supra,78 Ohio St.3d at 387. (Quoting State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717, 720-721). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins, supra.
 {¶ 18} Essentially, appellant contends that the evidence shows he had every intention of performing the work that he had promised and further the evidence is insufficient to prove beyond a reasonable doubt that he took money for service he did not intend to perform. *Page 6 
 {¶ 19} R.C. 2913.02 provides, in pertinent part:
 {¶ 20} "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either:
 {¶ 21} "* * *
 {¶ 22} "(3) By deception;"
 {¶ 23} "Deception" is defined in R.C. 2913.01 in the following manner:
 {¶ 24} "(A) `Deception' means knowingly deceiving another or causing another to be deceived, by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission which creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact."(Emphasis added.)
 {¶ 25} "[U]nder the combination of R.C. 2913.02(A)(3) and 2913.01(A), the state, in order to prove theft by deception, must establish: (1) that the accused knowingly obtained or exerted control over property or services; (2) that the accused obtained or exerted such control with purpose to deprive; (3) that the accused obtained or exerted such control by knowing deception; and (4) that such knowing deception was the result of misrepresentation or other conduct creating a false impression in another." State v. Graven (1978), 54 Ohio St.2d 114, 126,374 N.E.2d 1370, 1377. (J. Brown, dissenting), reversed on othergrounds, State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492.
 {¶ 26} During a one-year period between March 2004 and November 2005, appellant received nearly $56,000.00 from seventy five year old Mildred Stahl. The state presented evidence that appellant received money for work he did not perform. (1T. at *Page 7 
189-199). Appellant contended that the majority of the money was given to him by Ms. Stahl as loans and gifts.
 {¶ 27} During a two-year period between May 2004 and August 2006, appellant received nearly $36,000.00 from seventy-three year old James Bauer. Appellant additionally utilized cash advances, purchases and checks to obtain an additional $3,000.00 from Mr. Bauer's credit card. Appellant asserted that he received money as loans and cash advances for work he was going to do for Mr. Bauer. Appellant did not replace the storm door, or skirting around Mr. Bauer's trailer. Kitchen cabinets that appellant had promised were produced only after appellant was indicted. The cabinets were not the correct size. After indictment, while on bond and with the specific term that he have no contact with Mr. Bauer, appellant obtained $3,400.00 from Mr. Bauer in the form of cash advances. Appellant did put two coats of rubber sealant on the roof of Mr. Bauer's mobile home.
 {¶ 28} During a nine month period between January 2006 and September 2006, appellant received nearly $26,000.00 from Steve McClellan. Appellant did not replace Mr. McClellan's roof or perform any other repair work as promised. Mr. McClellan hired another contractor at a price of $4, 800.00 to replace the roof on his mobile home.
 {¶ 29} Appellant admitted that he had a prior theft conviction.
 {¶ 30} Viewing the evidence in the case at bar in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant had committed the crimes for which he was indicted. *Page 8 
 {¶ 31} We hold, therefore, that the State met its burden of production regarding each element of the crimes and, accordingly, there was sufficient evidence to support appellant's convictions.
 {¶ 32} "A fundamental premise of our criminal trial system is that `the jury is the lie detector.' United States v. Barnard, 490 F.2d 907,912 (C.A.9 1973) (emphasis added), cert. denied, 416 U.S. 959,94 S.Ct. 1976, 40 L.Ed.2d 310 (1974). Determining the weight and credibility of witness testimony, therefore, has long been held to be the `part of every case [that] belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men.' Aetna Life Ins. Co. v. Ward, 140 U.S. 76, 88,11 S.Ct. 720, 724-725, 35 L.Ed. 371 (1891)". United States v. Scheffer
(1997), 523 U.S. 303, 313, 118 S.Ct. 1261, 1266-1267.
 {¶ 33} Although appellant cross-examined the witnesses and argued that he intended to pay the monies back to the various victims, and that he had made some payments to them, and further that he intended to perform the work, the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. State v. Jamison (1990),49 Ohio St.3d 182, certiorari denied (1990), 498 U.S. 881.
 {¶ 34} The jury was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence". State v. Craig (Mar. 23, 2000), Franklin App. No. 99AP-739, citing State v. Nivens (May 28, 1996), Franklin App. No. 95APA09-1236 Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. State v. *Page 9 Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21, citingState v. Antill (1964), 176 Ohio St. 61, 67, 197 N.E.2d 548.; State v.Burke, Franklin App. No. 02AP-1238, 2003-Ohio-2889, citing State v.Caldwell (1992), 79 Ohio App.3d 667, 607 N.E.2d 1096. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. State v.Jenks (1991), 61 Ohio St. 3d 259, 574 N.E. 2d 492.
 {¶ 35} After reviewing the evidence, we cannot say that this is one of the exceptional cases where the evidence weighs heavily against the convictions. The jury did not create a manifest injustice by concluding that appellant was guilty of the crimes charged in the indictment.
 {¶ 36} We conclude the trier of fact, in resolving the conflicts in the evidence, did not create a manifest injustice to require a new trial.
 {¶ 37} The jury heard the witnesses, evaluated the evidence, and was convinced of appellant's guilt.
 {¶ 38} Accordingly, appellant's first assignment of error is denied.
 II. {¶ 39} In his second assignment of error, appellant argues that the trial court erred by imposing consecutive sentences. We disagree.
 {¶ 40} Recently in State v. Kalish, ___ Ohio St.3d___, 2008-Ohio-4912, ___ N.E.2d ___ the Ohio Supreme Court reviewed its decision in State v.Foster, 109 Ohio St. 3d 1, 2006-Ohio-856, 845 N.E. 2d 470 as it relates to the remaining sentencing statutes and appellate review of felony sentencing. *Page 10 
 {¶ 41} In Kalish, the Court discussed the affect of theFoster decision on felony sentencing. The Court stated that, inFoster, the Ohio Supreme Court severed the judicial fact-finding portions of R.C. 2929.14, holding that "trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences."Kalish at ¶ 1 and 11, citing Foster at ¶ 100, See also, State v.Payne, 114 Ohio St. 3d 502, 2007-Ohio-4642, 873 N.E. 2d 306; State v.Firouzmandi, Licking App. No. 2006-CA-41, 2006-Ohio-5823.
 {¶ 42} "Thus, a record after Foster may be silent as to the judicial findings that appellate courts were originally meant to review under 2953.08(G)(2)." Kalish at ¶ 12. However, although Foster eliminated mandatory judicial fact finding, it left in tact R.C. 2929.11 and2929.12, and the trial court must still consider these statutes.Kalish at ¶ 13, see also State v. Mathis, 109 Ohio St.3d 54,2006-Ohio-855, 846 N.E.2d 1; State v. Firouzmandi, supra at ¶ 29.
 {¶ 43} "Thus, despite the fact that R.C. 2953.08(G)(2) refers to the excised judicial fact-finding portions of the sentencing scheme, an appellate court remains precluded from using an abuse-of-discretion standard of review when initially reviewing a defendant's sentence. Instead, the appellate court must ensure that the trial court has adhered to all applicable rules and statutes in imposing the sentence. As a purely legal question, this is subject to review only to determine whether it is clearly and convincingly contrary to law, the standard found in R.C. 2953.08(G)." Kalish at ¶ 14.
 {¶ 44} Therefore, Kalish holds that, in reviewing felony sentences and applying Foster to the remaining sentencing statutes, the appellate courts must use a two-step *Page 11 
approach. "First, they must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the trial court's decision in imposing the term of imprisonment shall be reviewed under an abuse of discretion standard." Kalish at ¶ 4, State v. Foster, 109 Ohio St. 3d 1,2006-Ohio-856, 845 N.E. 2d 470.
 {¶ 45} The Supreme Court held, in Kalish, that the trial court's sentencing decision was not contrary to law. "The trial court expressly stated that it considered the purposes and principles of R.C. 2929.11, as well as the factors listed in R.C. 2929.12. Moreover, it properly applied post release control, and the sentence was within the permissible range. Accordingly, the sentence is not clearly and convincingly contrary to law." Kalish at ¶ 18. The Court further held that the trial court "gave careful and substantial deliberation to the relevant statutory considerations" and that there was "nothing in the record to suggest that the court's decision was unreasonable, arbitrary, or unconscionable." Kalish at ¶ 20.
 {¶ 46} In the case at bar, appellant was convicted of two counts of theft by deception from an elderly person, felonies of the second degree in violation of R.C. 2913.02(A) (3) and (B) (3). For a violation of a felony of the second degree, the court must impose a definite prison term of two, three, four, five, six, seven, or eight years. R.C. 2929.14(A) (2). Appellant was sentenced to five years on each count of theft by deception from an elderly person felonies. These sentences were ordered to be served consecutively. *Page 12 
 {¶ 47} Appellant was also convicted of misuse of a credit card, a third degree felony in violation of R.C. 2913.21(B)(2) and (D)(4). Pursuant to R.C. 2929.14, the sentencing range for a third degree felony is a prison term of one, two, three, four, or five years. In the case at bar, appellant was ordered to serve a term of three years. However, this sentence was ordered to run concurrently to the sentences for two counts of theft by deception from an elderly person.
 {¶ 48} Appellant was convicted of one count of theft by deception from an elderly person, a felony of the fourth degree in violation of R.C. 2913.02(A) (2) and (A) (3). Pursuant to R.C. 2929.14, the sentencing range for a fourth degree felony is a prison term of either six, seven, eight, nine, ten, eleven, twelve, thirteen, fourteen, fifteen, sixteen, seventeen, or eighteen months. In the case at bar, appellant was ordered to serve a term of twelve months. This sentence was ordered to run consecutive to the other sentences.
 {¶ 49} Finally, appellant was convicted of one count of theft by deception from an elderly person a felony of the fourth degree in violation of R.C. 2913.02(A) (3). In the case at bar, appellant was ordered to serve a term of twelve months. This sentence was ordered to run consecutive to the other sentences.
 {¶ 50} Upon review we find that the trial court's sentencing on the second, third and fourth degree felony offenses is in compliance with applicable rules and sentencing statutes. The sentences were within the statutory sentencing ranges. Furthermore, the record reflects that the trial court considered the purposes and principles of sentencing and the seriousness and recidivism factors as required in Sections 2929.11 and *Page 13 
2929.12 of the Ohio Revised Code and advised appellant regarding post release control. Therefore, the sentences are not clearly and convincingly contrary to law.
 {¶ 51} Having determined that the sentences are not contrary to law we must now review the sentences pursuant to an abuse of discretion standard. State v. Firouzmandi, supra at ¶ 40. An abuse of discretion is "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 52} In reviewing the record, we find that the trial court gave careful and substantial deliberation to the relevant statutory considerations. The court considered appellant's prior criminal record, the vulnerability of each victim and the harm caused by appellant's actions.
 {¶ 53} There is no evidence in the record that the judge acted unreasonably by, for example, selecting the sentence arbitrarily, basing the sentence on impermissible factors, failing to consider pertinent factors, or giving an unreasonable amount of weight to any pertinent factor. We find nothing in the record of appellant's case to suggest that his sentence was based on an arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment. State v.Firouzmandi, supra at ¶ 43.
 {¶ 54} It appears to this Court that the trial court's statements at the sentencing hearing were guided by the overriding purposes of felony sentencing to protect the public from future crime by the offender and others and to punish the offender. R.C. 2929.11.
 {¶ 55} Based on the transcript of the sentencing hearing and the subsequent judgment entry, this Court cannot find that the trial court acted unreasonably, arbitrarily, *Page 14 
or unconscionably, or that the trial court violated appellant's rights to due process under the Ohio and United States Constitutions in its sentencing appellant to the aggregate term of twelve (12) years incarceration.
 {¶ 56} Appellant's second assignment of error is denied.
 {¶ 57} The judgment of the Licking County Court of Common Pleas is affirmed.
Gwin, P. J., Farmer, J., and Delaney, J., concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Licking County Court of Common Pleas is affirmed. Costs to appellant.
[1] The Court will rely substantially on the pertinent facts as presented by the appellant in its Brief, which the appellee State of Ohio, as stated in its response, generally accepts.
[2] Appellant does not argue that the evidence is insufficient to sustain his conviction. See, e.g. State v. Thompkins (1997),78 Ohio St.3d 380, 678 N.E.2d 541. *Page 1