OPINION *Page 2 
{¶ 1} On November 9, 2006, the Muskingum County Grand Jury indicted appellant, John Jamison, IV, on one count of possession of drugs (crack cocaine) in violation of R.C. 2925.11. Said charge arose from the discovery of crack cocaine in appellant's pocket during a pat-down search following a traffic stop. Appellant did not have a valid driver's license and there was a strong odor of alcohol about his person.
 {¶ 2} A jury trial commenced on March 6, 2007. The jury found appellant guilty as charged. By entry filed March 12, 2007, the trial court sentenced appellant to five years in prison.
 {¶ 3} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I {¶ 4} "THE COURT ERRED IN QUALIFYING ERIN REED, BCI FORENSIC CHEMIST, AS AN EXPERT WITNESS AND IN LETTING HER GIVE A LEGAL CONCLUSION."
 II {¶ 5} "THE VERDICT IS NOT SUPPORTED BY THE SUFFICIENCY OF THE EVIDENCE AND IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 III {¶ 6} "THE COURT ERRED IN SENTENCING THE APPELLANT TO THE MANDATORY FINE OF $5000 WHEN HE HAD FILED AN AFFIDAVIT OF INDIGENCY AND THE COURT FOUND APPELLANT INDIGENT." *Page 3 
 IV {¶ 7} "THE COURT ERRED IN GIVING THE MAXIMUM SENTENCE CONSIDERING SENTENCING STATUES RC 2929.11 THROUGH 2929.14."
 V {¶ 8} "THE STATE FAILED TO PROVIDE SUFFICIENT EVIDENCE OF `CRACK' COCAINE, INSTEAD MERELY PROVIDING EVIDENCE OF `COCAINE.'"
 VI {¶ 9} "THE STATE FAILED TO ALLOW PREEMPTORY CHALLENGES TO ALTERNATE JUROR AMY WILKINS."
 VII {¶ 10} "THE COURT ERRED IN TRYING THE APPELLANT IN HIS JAIL CLOTHING AND SO VIOLATED HIS FUNDAMENTAL RIGHT TO A PRESUMPTION OF INNOCENCE."
 I {¶ 11} Appellant claims the trial court erred in permitting Erin Reed, a forensic chemist for the Ohio Bureau of Criminal Identification and Investigation (hereinafter "BCI"), to testify as an expert and give an opinion that was a legal conclusion. We disagree.
 {¶ 12} Evid. R. 702 governs testimony by experts and states the following:
 {¶ 13} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons; *Page 4 
 {¶ 14} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 {¶ 15} "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:
 {¶ 16} "(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;
 {¶ 17} "(2) The design of the procedure, test, or experiment reliably implements the theory;
 {¶ 18} "(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result."
 {¶ 19} Ms. Reed is a forensic chemist employed by BCI. T. at 111. After explaining her educational background, specialized training, and attendance at multiple seminars throughout the year, the prosecutor asked for Ms. Reed to be qualified as an expert. T. at 111-112. Defense counsel had no objection. T. at 112.
 {¶ 20} Appellant argues on redirect examination, Ms. Reed stated a legal conclusion, not an expert opinion:
 {¶ 21} "Q. What does homogenous mean?
 {¶ 22} "A. All similar and alike.
 {¶ 23} "Q. So those two separate rocks, so to speak, that you're looking at have the same characteristics?
 {¶ 24} "A. Yes. *Page 5 
 {¶ 25} "Q. Okay. When doing testing for the purposes of establishing whether a drug contains a controlled substance, does it matter how much or what the quantitative analysis is?
 {¶ 26} "A. From my understanding, no, it doesn't. The — my — I'm not a law expert but the O.R.C. does state any compounds present or mixture of a controlled substance." T. at 120-121.
 {¶ 27} No objection was made therefore, any challenges must be considered under the plain error standard. An error not raised in the trial court must be plain error for an appellate court to reverse.State v. Long (1978), 53 Ohio St.2d 91; Crim. R. 52(B). In order to prevail under a plain error analysis, appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. Long. Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Id. at paragraph three of the syllabus.
 {¶ 28} Upon review, we find no evidence of plain error. Ms. Reed's qualifications were sufficient to meet the requirements of Evid. R. 702, and her response to the question at issue was clarified by her which was not a legal opinion, but just her understanding.
 {¶ 29} Assignment of Error I is denied.
 II {¶ 30} Appellant claims his conviction was against the sufficiency and manifest weight of the evidence. We disagree. *Page 6 
 {¶ 31} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991), 61 Ohio St.3d 259. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Jenks at paragraph two of the syllabus, following Jackson v.Virginia (1979), 443 U.S. 307. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Martin (1983), 20 Ohio App.3d 172, 175. See also, State v.Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175.
 {¶ 32} Appellant was convicted of possession of drugs (crack cocaine) in violation of R.C. 2925.11(A) which states, "No person shall knowingly obtain, possess, or use a controlled substance." "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).
 {¶ 33} Appellant argues the state failed to establish the proper chain of custody of the crack-cocaine. Appellant maintains the evidence was handled by five people and *Page 7 
there was no proof of the chain of evidence other than the testimony of these people. Appellant argues the numerous handling gives rise to reasonable doubt.
 {¶ 34} We note objections were not made to the admission of the crack-cocaine and the BCI lab report, and Ms. Reed's testimony of her analysis of the substance in question. T. at 118, 122. Appellant cannot now complain of error in the admission of the evidence, when he did not object to its admission and authenticity at trial. Once again, the arguments herein can only be reviewed under the plain error standard.
 {¶ 35} Zanesville Police Patrolman Shawn Beck was the one who found something in appellant's left front pants pocket, "a clear baggie * * * and it had two off-white in color sizeable rocks." T. at 97. Patrolman Beck placed the rocks into an evidence bag, dated it, initialed it, and filled out an evidence tag. Id. He identified the evidence bag as State's Exhibit 1. Id. After securing the rocks into the evidence bag, Patrolman Beck transported the bag to the Zanesville Police Department, logged it in, and turned it over to the evidence area. T. at 98.
 {¶ 36} Detective Gary Moore, an evidence technician with the Zanesville Police Department, explained how the evidence bag was then placed into a secured temporary storage locker; only two technicians have keys to the locker. T. at 105. He personally removed the evidence bag from the temporary storage locker, entered it into his computer, placed a bar code sticker on it, and placed it in the permanent vault "until it gets to the lab or to trial." T. at 106.
 {¶ 37} Detective Donald Bates, the other evidence technician, removed the evidence bag from the vault, and personally transported it to BCI. T. at 109. The evidence bag remained sealed. T. at 110. *Page 8 
 {¶ 38} Ms. Reed received the evidence bag for testing; she marked it, dated it, and placed it in a locked evidence vault. T. at 114. She then retrieved the evidence bag from the vault, inspected the bag to make sure it was still sealed, and then analyzed the contents. Id. Ms. Reed identified the evidence bag, State's Exhibit 1, as the bag submitted to her for analysis. Id.
 {¶ 39} Based upon the markings from the evidence locker and vaults of the Zanesville Police Department and BCI, the chain of custody for State's Exhibit 1 was duly noted.
 {¶ 40} Upon review, we find no error in the authentication of State's Exhibit 1 rising to the level of plain error, and no error to cause any reasonable doubt as to its authenticity or integrity.
 {¶ 41} Assignment of Error II is denied.
 III {¶ 42} In its brief at 10, appellee concedes this assignment of error should be granted and the matter remanded to the trial court on the issue of waiving the mandatory fine in light of the trial court's finding of indigency.
 {¶ 43} Assignment of Error III is granted.
 IV {¶ 44} Appellant claims the trial court erred in sentencing him to the maximum sentence. We disagree.
 {¶ 45} In State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, paragraph seven of the syllabus, the Supreme Court of Ohio held, "[t]rial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make *Page 9 
findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences."
 {¶ 46} Additionally, this court has held that in post-Foster cases, appellate review of sentences shall be pursuant to an abuse of discretion standard. State v. Firouzmandi, Licking App. No. 06-CA-41,2006-Ohio-5823; State v. Duff, Licking App. No. 06-CA-81,2007-Ohio-1294. An abuse of discretion implies that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983)5 Ohio St.3d 217; State v. Adams (1980), 62 Ohio St.2d 151. When applying an abuse of discretion standard, an appellate court may not generally substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd.
(1993), 66 Ohio St.3d 619.
 {¶ 47} In this case, appellant was convicted of possession of drugs, a felony in the third degree. The sentencing range for a third degree felony is "one, two, three, four, or five years." R.C. 2929.14(A)(3). The trial court sentenced appellant to five years in prison. See, Entry filed March 12, 2007.
 {¶ 48} We note appellant chose to forego a presentence investigation:
 {¶ 49} "MR. SEALOVER: Your Honor, Mr. Jamison has expressed a desire to me to forego a presentence investigation and be sentenced very shortly.* * *
 {¶ 50} "THE COURT: * * * You understand you're not eligible for any type of early release or intensive program prison, anything of that nature?
 {¶ 51} "THE DEFENDANT: From my understanding, I'm not eligible for any kind of early release whatsoever anyway.
 {¶ 52} "* * * *Page 10 
 {¶ 53} "THE COURT: And you understand, Mr. Jamison, that by waiving the presentence investigation, that you're giving up any rights to an intensive program prison or boot camp or — or any possible judicial release. You know the term is mandatory, but you understand you're giving up any of those rights by waiving your presentence investigation?
 {¶ 54} "THE DEFENDANT: Yes, I do.
 {¶ 55} "THE COURT: And you're willing to waive that presentence investigation knowing that?
 {¶ 56} "THE DEFENDANT: Yes, sir.
 {¶ 57} "THE COURT: And you wish to be sentenced here today?
 {¶ 58} "THE DEFENDANT: Yes, sir." T. at 154-155 and 157-158, respectively.
 {¶ 59} In sentencing appellant to five years in prison, the trial court stated the following:
 {¶ 60} "THE COURT: Well, Mr. Jamison, I think it's clear that you show absolutely no remorse for what you have done, not gainfully employed when you're out. You don't take personal responsibility. This is a felony of the third degree, being possession of drugs, specifically crack-cocaine.
 {¶ 61} "And so here you are, you have a prior possession of drug conviction, carrying a concealed weapon, and a weapon under disability. So even after one felony conviction, that being for assault on a peace officer, you still have a weapon and drugs. And here you are after that, having 5.7 grams of crack-cocaine in your pocket at 10:30 at night driving drunk and without a license. Pretty accurate?
 {¶ 62} "THE DEFENDANT: Yeah, I got a drug and alcohol problem. *Page 11 
 {¶ 63} "THE COURT: Pretty accurate though?
 {¶ 64} "THE DEFENDANT: Almost.
 {¶ 65} "THE COURT: Okay. Based upon the facts I just stated into the record, with regard to possession of drugs, specifically crack-cocaine, a felony of the third degree, I am going to sentence you to the maximum five years in prison. It is mandatory prison time, Mr. Jamison, meaning you will do all five years. You aren't eligible for judicial release or intense program prison, nor are you eligible for any type of boot camp, anything of that nature." T. at 159-160.
 {¶ 66} The trial court's imposition of five years is within the statutory sentencing range, and as such, is a proper sentence. Appellant contends that his conduct was not more serious than conduct normally constituting the offense, but was in fact, less serious, [R.C. 2929.12(B) and (C)], and he was unlikely to commit further crimes [R.C. 2929.13(D)]. Upon review, we are not persuaded that the trial court failed to properly consider the general sentencing guidance factors, and hold appellant's sentence sub judice was not unreasonable, arbitrary, or unconscionable.
 {¶ 67} Assignment of Error IV is denied.
 V {¶ 68} Appellant claims the evidence did not support a finding that he possessed crack-cocaine as Ms. Reed's opinion failed to establish that State's Exhibit 1 was crack-cocaine. We disagree.
 {¶ 69} Although the direct examination vacillated between calling State's Exhibit 1 "cocaine" and "crack cocaine," on cross-examination, defense counsel specifically asked if the substance was crack-cocaine to which Ms. Reed replied, "Those are my *Page 12 
findings, yes." T. at 118. Furthermore, State's Exhibit 2, the BCI lab report, was admitted without objection and it stated the substance was "crack-cocaine."
 {¶ 70} Upon review, we find sufficient, reliable evidence that the substance in State's Exhibit 1 was crack-cocaine.
 {¶ 71} Assignment of Error V is denied.
 VI {¶ 72} Appellant claims the trial court erred in not affording him a peremptory challenge to an alternate juror. We disagree.
 {¶ 73} Crim. R. 24(D) and (E) govern peremptory challenges and state the following in pertinent part:
 {¶ 74} "(D) Peremptory challenges. In addition to challenges provided in division (C) of this rule, if there is one defendant, each party peremptorily may challenge three prospective jurors in misdemeanor cases, four prospective jurors in felony cases other than capital cases, and six prospective jurors in capital cases. * * *
 {¶ 75} "(E) Manner of exercising peremptory challenges. Peremptory challenges may be exercised after the minimum number of jurors allowed by the Rules of Criminal Procedure has been passed for cause and seated on the panel. Peremptory challenges shall be exercised alternately, with the first challenge exercised by the state. The failure of a party to exercise a peremptory challenge constitutes a waiver of that challenge, but does not constitute a waiver of any subsequent challenge. However, if all parties, alternately and in sequence, fail to exercise a peremptory challenge, the joint failure constitutes a waiver of all peremptory challenges. *Page 13 
 {¶ 76} "A prospective juror peremptorily challenged by either party shall be excused and another prospective juror shall be called who shall take the place of the prospective juror excused and be sworn and examined as other prospective jurors. The other party, if that party has peremptory challenges remaining, shall be entitled to challenge any prospective juror then seated on the panel. * * *"
 {¶ 77} Subsection (G)(1) governs alternate jurors in non-capital cases and states the following:
 {¶ 78} "The court may direct that not more than six jurors in addition to the regular jury be called and impaneled to sit as alternate jurors. Alternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties. Alternate jurors shall be drawn in the same manner, have the same qualifications, be subject to the same examination and challenges, take the same oath, and have the same functions, powers, facilities, and privileges as the regular jurors. Except in capital cases, an alternate juror who does not replace a regular juror shall be discharged after the jury retires to consider its verdict. Each party is entitled to one peremptory challenge in addition to those otherwise allowed if one or two alternate jurors are to be impaneled, two peremptory challenges if three or four alternate jurors are to be impaneled, and three peremptory challenges if five or six alternative jurors are to be impaneled. The additional peremptory challenges may be used against an alternate juror only, and the other peremptory challenges allowed by this rule may not be used against an alternate juror." *Page 14 
 {¶ 79} The record establishes the trial court failed to offer a peremptory challenge to appellant or defense counsel. Defense counsel did not object to the procedure or request a challenge. If there was any error, it was invited error:
 {¶ 80} "The law imposes upon every litigant the duty of vigilance in the trial of a case, and even where the trial court commits an error to his prejudice, he is required then and there to challenge the attention of the court to that error, by excepting thereto, and upon failure of the court to correct the same to cause his exceptions to be noted. It follows, therefore, that, for much graver reasons, a litigant cannot be permitted, either intentionally or unintentionally, to induce or mislead a court into the commission of an error and then procure a reversal of the judgment for an error for which he was actively responsible."State v. Kollar (1915), 93 Ohio St. 89, 91.
 {¶ 81} Furthermore, the alternate juror was excused and did not deliberate. T. at 149.
 {¶ 82} Assignment of Error VI is denied.
 VII {¶ 83} Appellant claims the trial court erred in trying him in his prison jumpsuit. We disagree.
 {¶ 84} It is conceded that it was not the fault of appellee or appellee's agent that appellant was in his jail clothing as appellant's family failed to bring appellant any clothes on the day of trial as promised:
 {¶ 85} "THE COURT: I just want to put on the record that you're going forward in your orange jumpsuit.
 {¶ 86} "THE DEFENDANT: I wish not to go like this. *Page 15 
 {¶ 87} "THE COURT: Pardon me?
 {¶ 88} "THE DEFENDANT: I wish not to go like this.
 {¶ 89} "THE COURT: I understand, but you don' have clothing. Right?
 {¶ 90} "THE DEFENDANT: Not that I'm aware of.
 {¶ 91} "THE COURT: That's the only way you can go, Mr. Jamison. We're not going — the jurors are here. Your brother was supposed to bring in clothes for you. He refused to do it for whatever reason. And we're going forward with the trial. Any objection, Mr. Sealover?
 {¶ 92} "MR. SEALOVER: No. Understood, Your Honor." T. at 7.
 {¶ 93} It is uncontroverted that neither appellant nor defense counsel objected on the record or moved for a postponement of the trial to secure civilian clothes. We understand being in prison clothing creates an adverse impression on the jurors and casts a large shadow over the fairness at trial. However, as in the last assignment of error, if there was any error, it was invited error.
 {¶ 94} We also note the jury heard that appellant was put in jail. T. at 98. During the trial, the trial court specifically instructed the jurors on the presumption of innocence. T. at 140.
 {¶ 95} Although we cannot condone the trial court proceeding to trial with appellant in prison attire, we find it does not rise to the level of plain error and did not create a manifest injustice. Appellant's defense was that he did not possess the drugs as Patrolman Beck planted the drugs on him. Therefore, the jury was required to test appellant's credibility vis-à-vis Patrolman Beck's testimony. Upon review, we cannot *Page 16 
conclude appellant's attire had any affect on his presumption of innocence as it pertains to this case.
 {¶ 96} Assignment of Error VII is denied.
 {¶ 97} The judgment of the Court of Common Pleas of Muskingum County, Ohio is affirmed in part and reversed in part.
 By Farmer, P.J. Wise, J. and Delaney, J. concur. *Page 17 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Muskingum County, Ohio is affirmed in part and reversed in part, and the matter is remanded to said court for further proceedings consistent with this opinion. Costs to appellee. *Page 1