OPINION *Page 2 
{¶ 1} Defendant-appellant, Craig Chandler Wolfe, appeals the revocation of his community control and imposition of a six-year prison following an evidentiary hearing in the Stark County Court of Common Pleas. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE[1] {¶ 2} In 2005, the Stark County Grand Jury returned an indictment charging appellant, with one count of robbery. Appellant pleaded not guilty by reason of insanity, and moved for a competency evaluation. The trial court ordered both sanity and a competency evaluation. The completion of the reports was delayed due to appellant's lack of cooperation with the evaluators. The evaluations, once they were completed, concluded that appellant was both competent to stand trial, as well as sane at the time he committed the criminal offense of robbery. Appellant, through his counsel, stipulated to the competency evaluation and withdraw his plea of not guilty by reason of insanity. Based on these evaluations, the trial court found appellant both competent and sane.
 {¶ 3} Upon accepting appellant's guilty plea, the court ordered a presentence investigation report. The court warned appellant that if community control sanctions were imposed and it were to be revoked due to appellant's violation of the terms and conditions of the community control sanctions, the court could either lengthen the term of probation, make its terms more restrictive, or impose a prison term of six years. Upon the completion of this report, the trial court opted to impose a community control sanction for a period of three years, instead of imposing a term of imprisonment. During *Page 3 
the guilty plea hearing, the trial court warned appellant about the consequences of violating the terms and conditions of the community control sanction.
 {¶ 4} Almost a year later, appellant's probation officer filed a motion to modify or revoke the community control sanction based upon appellant's refusal to take his daily medication. Appellant had been receiving help with the administration of his medication from the Assertive Community Treatment Team ["ACTT"]. It was further alleged that appellant had failed to meet with his probation officer. The initial motion was withdrawn upon appellant's promise that he would commence taking his medication and follow the terms and conditions of his probation.
 {¶ 5} After being released from jail upon the withdrawal of the revocation motion, appellant failed to resume taking his medication and failed to meet with his probation officer. The motion to revoke was refilled. The trial court conducted both a probable cause hearing and a revocation hearing.
 {¶ 6} At the hearings, the trial court heard evidence that appellant decided not to take his medication. Appellant eventually refused to open his door, telling the ACTT service that he was not going to take his medicine. Appellant became more and more argumentative during these encounters. The probation officer eventually came to the residence with police in order to direct appellant to take his medication. Appellant responded that he would, and complied for about a week. After that week, however, appellant again began his recalcitrant behavior and refused to take his medication. During this period, appellant failed to keep his scheduled appointments with his probation officer. Appellant further failed to notify the officer or explain his absences. The probation officer filed a motion to modify or revoke and arrested appellant. When *Page 4 
brought before the court, the probation officer opted to withdraw the motion upon appellant's promise to resume taking his medication. Upon his release from jail, however, appellant immediately resumed his recalcitrant behavior, refusing again to take his medication and meet with his probation officer. Based upon this behavior, a second motion to modify or revoke was filed.
 {¶ 7} At the conclusion of the evidentiary hearings, the trial court revoked appellant's community control sanction and imposed a prison term of six years.
 {¶ 8} Appellant did not immediately appeal the trial court's revocation and sentencing entry, but instead moved this Court to pursue a delayed appeal, pursuant to App. R. 5(A). This Court granted appellant leave to pursue the delayed appeal.
 {¶ 9} Appellant has raised the following three assignments of error for our consideration:
 {¶ 10} "I. THE TRIAL COURT ERRED AT THE COMMUNITY CONTROL REVOCATION HEARING BY IMPOSING A SIX YEAR PRISON SENTENCE UPON MR. WOLFE, BECAUSE THAT SENTENCE WAS NOT REASONABLY CALCULATED TO PUNISH MR. WOLFE FOR HIS FAILING TO TAKE HIS MEDICATION OR TO PROTECT THE PUBLIC FROM FUTURE CRIME.
 {¶ 11} "II. DEFENSE COUNSEL'S FAILURE TO REQUEST A COMPETENCY DETERMINATION BEFORE THE COMMUNITY CONTROL REVOCATION HEARING CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL BECAUSE IT DENIED MR. WOLFE EVEN THE MINIMUM DUE PROCESS RIGHTS AVAILABLE TO HIM DURING THE COMMUNITY CONTROL REVOCATION HEARING AND LED TO THE COURT'S REVOKING HIS COMMUNITY CONTROL SANCTION. *Page 5 
 {¶ 12} "III. DEFENSE COUNSEL'S FAILURE TO PRESENT ANY DEFENSE OR RELEVANT MITIGATING EVIDENCE CEDED ANY CHANCE MR. WOLFE HAD TO AVOID IMPRISONMENT. CONSEQUENTLY, COUNSEL'S FAILURE CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL."
 I. {¶ 13} In his first assignment of error, appellant argues that the trial court erred in revoking his community control sanctions and imposing a six-year prison sentence. Appellant asserts that such a sanction is not reasonably calculated to punish him for the violation of the terms of the community control sanction and further, is not reasonably calculated to protect the public.
 {¶ 14} There is no dispute that, in the case at bar, appellant was advised at his original sentencing hearing that the court could either extend the term of the community control sanction, make the terms more restrictive, or impose a prison term of six years. (Sent. T. Aug. 21, 2006 at 4-5). Appellant further concedes that he "technically violated the terms of his community control. . ."[2]
 {¶ 15} Appellant's argument centers on the distinction between "probation" under the pre-Senate Bill 2 case law, and "community control sanctions" under the present sentencing statutes. In State v.Gilliam (June 10, 1999), Lawrence App. No. 98CA30, the Fourth District Court of Appeals explained the difference between "probation" and "community control sanctions" as follows,
 {¶ 16} "Community control sanctions essentially replace the concept of `probation' in Ohio's criminal justice system. See generally Griffin Katz, Ohio Felony Sentencing Law (1998 Ed.) 394-396, §§ S.2-T5.4. Although similar in their operational *Page 6 
effect, community control sanctions differ a great deal from probation in many ways including the manner by which violations of those controls are handled. Judge Griffin and Professor Katz explain this difference in their treatise as follows:
 {¶ 17} "`Prior to 1995 Senate Bill 2, it was quite appropriate for a judge to treat probation as a contract for leniency. The judge imposed but suspended a prison sentence-the presumed proper punishment for the crime of conviction. Probation was conditioned on good behavior. Violation of that probation was a breach of contract with the sentencing judge. For the breach, the judge could properly impose the suspended prison sentence-even for the most trivial violation of probation.
 {¶ 18} "`Under Senate Bill 2, a sentence to a community control sanction is not a contract for good behavior that automatically is punishable by prison if it is violated. The community control sanction that is imposed is the appropriate sentence for the crime of conviction. That sanction was the one that should have adequately punished the offender for his misconduct and should have adequately protected the public from future crime by the offender. The sentence should have been reasonably calculated to achieve those overriding purposes. Just as the Parole Board can no longer extend a sentence as a revised punishment for the felony which sent the offender to the penitentiary, so the courtwhich imposes punishment for a violation of a community control sanctioncannot punish the offender again for the crime that gave rise to thecommunity control sanction. The sanction for the violation of the community control sanction should be the sanction that is commensurate with the seriousness of the violation and adequately protects the public from future crime by the offender and others.' Id. at 426-427, § T5.36 (Emphasis added.) (Footnotes deleted.)." Gilliam, supra at * 3. *Page 7 
 {¶ 19} Appellant first contends that we should use a de novo standard of review and determine, without deference to the trial court, whether the six-year sentence imposed upon him for violating the terms of his community control is reasonable as a matter of law.[3]
 {¶ 20} However, recently in State v. Kalish, 120 Ohio St.3d 23,2008-Ohio-4912, 896 N.E.2d 124 the Ohio Supreme Court reviewed its decision in State v. Foster, 109 Ohio St. 3d 1, 2006-Ohio-856,845 N.E. 2d 470 as it relates to the remaining sentencing statutes and appellate review of felony sentencing.
 {¶ 21} In Kalish, the Court discussed the affect of theFoster decision on felony sentencing. The Court stated that, inFoster, the Ohio Supreme Court severed the judicial fact-finding portions of R.C. 2929.14, holding that "trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences."Kalish at ¶ 1 and 11, citing Foster at ¶ 100, See also, State v.Payne, 114 Ohio St. 3d 502, 2007-Ohio-4642, 873 N.E. 2d 306; State v.Firouzmandi, Licking App. No. 2006-CA-41, 2006-Ohio-5823.
 {¶ 22} "Thus, a record after Foster may be silent as to the judicial findings that appellate courts were originally meant to review under 2953.08(G)(2)." Kalish at ¶ 12. However, although Foster eliminated mandatory judicial fact-finding, it left in tact R.C. 2929.11 and2929.12, and the trial court must still consider these statutes.Kalish at ¶ 13, see also State v. Mathis, 109 Ohio St.3d 54,2006-Ohio-855, 846 N.E.2d 1; State v. Firouzmandi, supra at ¶ 29. *Page 8 
 {¶ 23} "Thus, despite the fact that R.C. 2953.08(G)(2) refers to the excised judicial fact-finding portions of the sentencing scheme, an appellate court remains precluded from using an abuse-of-discretion standard of review when initially reviewing a defendant's sentence. Instead, the appellate court must ensure that the trial court has adhered to all applicable rules and statutes in imposing the sentence. As a purely legal question, this is subject to review only to determine whether it is clearly and convincingly contrary to law, the standard found in R.C. 2953.08(G)." Kalish at ¶ 14.
 {¶ 24} Therefore, Kalish holds that, in reviewing felony sentences and applying Foster to the remaining sentencing statutes, the appellate courts must use a two-step approach. "First, they must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the trial court's decision in imposing the term of imprisonment shall be reviewed under an abuse of discretion standard." Kalish at ¶ 4,State v. Foster, 109 Ohio St. 3d 1, 2006-Ohio-856, 845 N.E. 2d 470.
 {¶ 25} The Supreme Court held, in Kalish, that the trial court's sentencing decision was not contrary to law. "The trial court expressly stated that it considered the purposes and principles of R.C. 2929.11, as well as the factors listed in R.C. 2929.12. Moreover, it properly applied post release control, and the sentence was within the permissible range. Accordingly, the sentence is not clearly and convincingly contrary to law." Kalish at ¶ 18. The Court further held that the trial court "gave careful and substantial deliberation to the relevant statutory considerations" and that there was *Page 9 
"nothing in the record to suggest that the court's decision was unreasonable, arbitrary, or unconscionable." Kalish at ¶ 20.
 {¶ 26} The relevant sentencing law is now controlled by the Ohio Supreme Court's decision in State v. Foster, i.e." * * * trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences."109 Ohio St.3d 1, 30, 2006-Ohio-856 at ¶ 100, 845 N.E.2d 470, 498.
 {¶ 27} Accordingly, if appellant violates his community control sanctions, the trial court must conduct a second sentencing hearing following the community-control violation and at that time comply with the decision in Foster. Thus, at the time of the second sentencing hearing, appellant could be sentenced to a term of incarceration either less than, but not more then, the six year term that the court advised at the original sentencing hearing on August 21, 2006. The trial court has full discretion to impose a prison sentence within the statutory range and is no longer required to make findings or give reasons for imposing maximum, consecutive, or more than the minimum sentences.State v. Hines, Ashland App. No. 2005-COA-046, 2006-Ohio-4053 at ¶ 9.
 {¶ 28} In the case at bar, appellant pled guilty and was convicted of one count of robbery, a felony of the second degree in violation of R.C. 2911.02(A) (2). The possible prison terms for such an offense are two, three, four, five, six, seven, or eight years. R.C. 2929.14(A) (2).
 {¶ 29} Upon review we find that the trial court's sentencing on the charge of robbery is in compliance with applicable rules and sentencing statutes. The sentence was within the statutory sentencing range. Furthermore, the record reflects that the trial *Page 10 
court considered the purposes and principles of sentencing and the seriousness and recidivism factors as required in Sections 2929.11 and2929.12 of the Ohio Revised Code and advised appellant regarding post release control. Therefore, the sentence is not clearly and convincingly contrary to law.
 {¶ 30} Having determined that the sentence is not contrary to law we must now review the sentence pursuant to an abuse of discretion standard. Kalish at ¶ 4; State v. Firouzmandi, supra at ¶ 40. In reviewing the record, we find that the trial court gave careful and substantial deliberation to the relevant statutory considerations.
 {¶ 31} Appellant contends that imposing a six-year prison sentence upon a defendant who suffers from schizoaffective disorder, bipolar type for not taking his medication, and missing two appointments with his probation officer, is an abuse of discretion. We agree that the trial judge should take into consideration all factors, including physical and mental examinations, in the reevaluation and reassessment of the correctness of the sentence upon a revocation of community control. SeeState v. Quails (1988), 50 Ohio App.3d 56, 552 N.E.2d 957. However, appellant's argument that it was unfair to not extend yet another attempt at treatment is without merit. The trial court has no such requirement imposed upon it. State v. Wheat, Stark App. No. 2007 CA 00165, 2008-Ohio-671 at ¶ 21.
 {¶ 32} Appellant argues, in essence, that his mental health problems constitute a mitigating factor; and because the actions that constituted the violation were beyond his control due to mental illness, he should not have been sentenced to prison.
 {¶ 33} In State v. Bleasdale (1990), 69 Ohio App.3d 68, the defendant was given a suspended sentence, was placed on probation on the condition that he be accepted *Page 11 
by, and successfully complete a specific drug program. The defendant was ultimately terminated from the program after he was diagnosed as suffering from several mental disorders and the staff determined that it was not equipped to deal with the mental problems that the defendant exhibited. After a probable cause hearing, the trial court revoked the defendant's probation and reinstated his sentence of confinement. On appeal, the Eleventh District Court of Appeals determined that the trial court had abused its discretion in revoking the defendant's probation because the defendant had not willfully or intentionally violated the conditions of his probation. Rather, the court stated, the defendant had been cooperating with the program, but was terminated "due to the program's inability to properly minister his case." Id. at 72.
 {¶ 34} In the case at bar, the facts supporting the revocation of appellant's community control sanctions are clearly distinguishable from those in Bleasdale. In this case, the court revoked appellant's community control solely based on his voluntary conduct, not based on conditions over which appellant had no control. Appellant had been receiving help with the administration of his medication on a daily basis from the Assertive Community Treatment Team ["ACTT"]. The trial court heard testimony that appellant became argumentative, refused to open the door and informed the team members that he was not going to take his medication. His probation officer spoke with him to remind and reinforce with appellant the importance of taking his medication on a daily basis as ordered by the trial court. Appellant indicated he would comply; however, he almost immediately ignored his promise. The probation officer went so far as to file a previous violation to allow the trial court to reinforce the fact that appellant could be sentenced to prison if he continued to refusal to accept the ACTT team's help in *Page 12 
administering his medication. Appellant again promised to comply. However, once released from jail, appellant continued to not take his medication or meet with his probation officer.
 {¶ 35} In spite of the resources provided by the court to assist appellant, appellant refused to comply with the trial court's orders. "What then could the court do but order appellant incarcerated? It is regrettable that appellant's needs could not be met, but once the community resources have been exhausted, the court's alternatives to incarceration are gone." State v. Hardy, Guernsey App. No. 01CA15, 2002-Ohio-899. [Gwin, J. dissenting][4].
 {¶ 36} The trial court clearly was cognizant of appellant's mental disorder, but found that the court and the probation department had provided appellant with the means to comply; however, appellant refused to accept the help that had been provided:
 {¶ 37} "I was cognizant of the circumstances surrounding the charge. I was also cognizant and took into consideration Mr. Wolfe's need for help. So I placed him on probation. And I did what I could and I'm satisfied that the probation officer did what he could and the other care providers did what they can to help Mr. Wolfe.
 {¶ 38} "Because we wanted him to have help and we wanted him to succeed. And we wanted him to be able to function and to have the tools to function in society the rest, the way that the rest of us do. *Page 13 
 {¶ 39} "And I've heard many, many times that when an individual takes medication, they begin to believe that they don't need the medication; I've also heard many, many times people say medication gives them symptoms they don't like, dryness of mouth and other things, and so they stop taking the medication and then this happens: Either what got Mr. Wolfe initially to the Court's attention or he doesn't comply with the orders of his probation officer.
 {¶ 40} "And I'm very, very sympathetic to that and I appreciate his brother coming and I'm sure that this is a very difficult thing for his brother and for the entire family.
 {¶ 41} "* * *
 {¶ 42} "I'm satisfied that the probation officer has done what he can do and that the other treatment providers have done what they can do to assist Mr. Wolfe in taking the medication.
 {¶ 43} "But for whatever reason, Mr. Wolfe decides that he's not going to take the medication, he has to deal with the consequences, because what every judge's fear is, that a person that's on probation, judicial release or whatever it is, is going to go out and do something which is going to harm another individual. And I'm not talking about punching them in the face or something of that nature. Something more severe.
 {¶ 44} "* * *
 {¶ 45} "I realize that there will be people who feel that is far too long for this type of action and given his, ah, condition, but that is what I feel is the appropriate sentence. . . ." (T. Aug. 31, 2007 at 36-39).
 {¶ 46} There is no evidence in the record that the judge acted unreasonably by, for example, selecting the sentence arbitrarily, basing the sentence on impermissible *Page 14 
factors, failing to consider pertinent factors, or giving an unreasonable amount of weight to any pertinent factor. We find nothing in the record of appellant's case to suggest that his sentence was based on an arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment. State v. Firouzmandi, supra at ¶ 43. Further, appellant was not convicted or punished for the offense of having a mental illness. Brookpark v. Danison (1996), 109 Ohio App.3d 529, 532,672 N.E.2d 722, 723; State v. Morin, Fairfield App. No. 2008-CA-10,2008-Ohio-6707 at ¶ 74. Finally, the trial court considered appellant's mental health issues at sentencing.
 {¶ 47} It appears to this Court that the trial court's statements at the sentencing and the revocation hearings were guided by the overriding purposes of felony sentencing to protect the public from future crime by the offender and others and to punish the offender. R.C. 2929.11.
 {¶ 48} Based on the transcript of the sentencing hearing, the revocation hearing and the subsequent judgment entries, this Court cannot find that the trial court acted unreasonably, arbitrarily, or unconscionably, or that the trial court violated appellant's rights to due process under the Ohio and United States Constitutions in its sentencing appellant.
 {¶ 49} Appellant's first assignment of error is denied.
 II. III. {¶ 50} In his second assignment of error, appellant argues that his counsel for the revocation proceeding was constitutionally ineffective for failing to request a competency evaluation and hearing before allowing the revocation hearing to proceed. In his third assignment of error, appellant argues that counsel was ineffective in failing *Page 15 
to present any defense or mitigating evidence at the revocation hearing. These assignments of error are interrelated and will be addressed together.
 {¶ 51} A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry in whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Lockhart v. Fretwell (1993), 506 U.S. 364,113 S.Ct. 838, 122 L.Ed.2d 180; Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373.
 {¶ 52} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley, 42 Ohio St.3d at 142,538 N.E.2d 373. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
 {¶ 53} In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Bradley, supra at syllabus paragraph three. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
 {¶ 54} The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient *Page 16 
before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Bradley at 143, 538 N.E.2d 373, quotingStrickland at 697. Accordingly, we will direct our attention to the second prong of the Strickland test.
 {¶ 55} In the context of a criminal trial, a trial court's failure to hold a competency hearing does not rise to constitutional proportions unless the record contains sufficient indicia of incompetency. State v.Bock (1986), 28 Ohio St. 3d 108, 502 N.E.2d 1016. According toBock, "[i]ncompetency must not be equated with mere mental or emotional instability or even with outright insanity. A defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting his counsel." Id. at 110, 502 N.E.2d 1016.
 {¶ 56} A similar standard has been employed to determine whether a defendant is mentally competent to forgo the presentation of mitigating evidence in the penalty phase of a capital case. State v. Ashworth
(1999), 85 Ohio St.3d 56, 706 N.E.2d 1231; State v. Johnson, Guernsey App. No. 2006-A-04, 2007-Ohio-1685 at ¶ 30.
 {¶ 57} In the case at bar, the competency evaluation completed as part of the pretrial process and before appellant's guilty plea concluded that appellant was competent to stand trial. The record in this case does not include any current evaluations that reach an opposite conclusion. Appellant's indicia of incompetence did not rise to a level that demanded a hearing or an evaluation, and thus, counsel was not ineffective in failing to request such a hearing.
 {¶ 58} In the context of a capital trial, the Ohio Supreme Court has held that defense counsel has a duty to investigate mitigating circumstances in order to make informed tactical decisions about what information would be most helpful to his or her *Page 17 
client. State v. Jackson, Franklin App. No. 01AP808, 2002-Ohio-3330("Jackson II"), citing State v. Johnson (1986), 24 Ohio St. 3d 87, 90,494 N.E.2d 1061. The decision to forego the presentation of additional mitigating evidence does not itself constitute proof of ineffective assistance of counsel. State v. Johnson (1986), 24 Ohio St. 3d 87, 91,494 N.E.2d 106.
 {¶ 59} Further, decisions regarding what witnesses to call fall within trial strategy and, absent prejudice, generally will not constitute ineffective assistance of counsel. State v. Hessler, Franklin App. No. 01AP-1011, 2002-Ohio-3321. To demonstrate prejudice, a petitioner must show not only that there was mitigating evidence counsel failed to present, but, also, "there is a reasonable probability that the evidence would have swayed the jury to impose a life sentence." Keith at 536,684 N.E.2d 47. We find no evidence here that would have led the trial court to impose a non-prison sanction for appellant's violations.
 {¶ 60} As we noted in our disposition of appellant's first assignment of error supra, the trial court was well aware of appellant's mental handicap. The trial court designed probation conditions to accommodate and to address those concerns.
 {¶ 61} Furthermore, the record fails to demonstrate that the trial court did not consider alternatives to incarceration. Where the record is silent, we presume that the trial court did consider alternatives to incarceration. See State v. Adams (1988), 37 Ohio St.3d 295,525 N.E.2d 1361, paragraph three of the syllabus ("a silent record raises the presumption that a trial court considered the factors contained in R.C. 2929.12"). State v. Bell (1990), 66 Ohio App. 3d 52, 58, 583 N.E.2d 414,417-418. *Page 18 
 {¶ 62} "When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect. See Strickland,466 U.S., at 690, 104 S.Ct. 2052 (counsel is `strongly presumed' to make decisions in the exercise of professional judgment). That presumption has particular force where a petitioner bases his ineffective-assistance claim solely on the trial record, creating a situation in which a court `may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive.' Massaro v. United States,538 U.S. 500, 505, 123 S.Ct. 1690, 1694, 155 L.Ed.2d 714 (2003). Moreover, even if an omission is inadvertent, relief is not automatic. The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight. See Bell, supra, at 702, 122 S.Ct. 1843;Kimmelman v. Morrison, 477 U.S. 365, 382, 106 S.Ct. 2574, 91 L.Ed.2d 305
(1986); Strickland, supra, at 689, 104 S.Ct. 2052; United States v.Cronic, 466 U.S. 648, 656, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984)."Yarborough v. Gentry (2003), 540 U.S. 1, 8, 124 S.Ct. 1, 6.
 {¶ 63} None of the instances raised by appellant rise to the level of prejudicial error necessary to find that he was deprived of a fair hearing. Having reviewed the record that appellant cites in support of his claim that he was denied effective assistance of counsel, we find appellant was not prejudiced by defense counsel's representation of him. The results of the revocation hearings were not unreliable nor were the proceedings fundamentally unfair because of the performance of defense counsel. *Page 19 
 {¶ 64} Accordingly, appellant's second and third assignments of error are hereby denied.
 {¶ 65} For the foregoing reasons, the judgment of the Stark County Court of Common Pleas is affirmed.
 Gwin, J., Farmer, P.J., and Wise, J., concur *Page 20 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas is affirmed. Costs to appellant.
[1] A Statement of the Facts underlying appellant's original conviction is unnecessary to our disposition of this appeal. Any facts needed to clarify the issues addressed in appellant's assignment of error shall be contained therein.
[2] Appellant's Brief at 9.
[3] Appellant's Brief at 7.
[4] As this court has previously noted, "We are not, through this holding, condemning a mentally ill person to jail or prison. R.C. 5120.17 provides for the transfer of mentally ill prisoners to mental hospitals or other appropriate institutions." State v. Bell (1990),66 Ohio App.3d 52, 583 N.E.2d 414. *Page 1