[Cite as *State v. Knerr*, 2014-Ohio-3988.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## AUGLAIZE COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,              CASE NO.  2-14-03

      v.

CAMERON M. KNERR,              O P I N I O N

      DEFENDANT-APPELLANT.

STATE OF OHIO,

      PLAINTIFF-APPELLEE,              CASE NO.  2-14-04

      v.

CAMERON M. KNERR,              O P I N I O N

      DEFENDANT-APPELLANT.

Appeals from Auglaize County Common Pleas Court
Trial Court Nos. 2011-CR-183 and 2009-CR-73

Judgments Affirmed

Date of Decision:  September 15, 2014

APPEARANCES:

    *John A. Poppe* for Appellant

    *R. Andrew Augsburger*  for Appellee

**ROGERS, J.**

{¶1} Defendant-Appellant, Cameron Knerr, appeals the judgments of the Court of Common Pleas of Auglaize County, finding him guilty of violating his judicial release and community control sanctions. On appeal, Knerr argues that the trial court erred by failing to bifurcate his community control revocation hearing and by not finding that Knerr was entrapped into violating his probation conditions. For the reasons that follow, we affirm the trial court's judgments.

{¶2} While this matter implicates two separate prosecutions, 2009 CR 0073 and 2011 CR 0183, their procedural histories are intertwined and therefore, we will address them together.

{¶3} In 2009 CR 0073, the Auglaize County Grand Jury indicted Knerr on July 23, 2009, with one count of safecracking in violation of R.C. 2911.31(A), a felony of the fourth degree; one count of breaking and entering in violation of R.C. 2911.13(A), a felony of the fifth degree; and one count of theft in violation of R.C. 2913.02(A)(2), a misdemeanor of the first degree. Pursuant to a plea agreement, the State dismissed the theft count and Knerr pleaded guilty to counts one and two. On November 9, 2009, the trial court sentenced Knerr to five years of community control.

{¶4} In 2011 CR 0183, the Auglaize County Grand Jury indicted Knerr on December 15, 2011, with one count of trafficking in marijuana within the vicinity of a juvenile in violation of R.C. 2925.03(A)(1)/(C)(3)(b), a felony of the fourth degree, and one count of trafficking in drugs in violation of R.C. 2925.03(A)(1)/(C)(1)(a), a felony of the fourth degree. Pursuant to a plea agreement, the State dismissed count one and Knerr pleaded guilty to count two of the indictment. Knerr was sentenced to five years of community control. He was also notified that if he were to violate the conditions of his community control, the court could impose a prison term of 18 months to run consecutive to his 2009 CR 0073 case.

{¶5} As a result of Knerr's 2011 CR 0183 case, the State moved to revoke Knerr's community control in case 2009 CR 0073. However, the State later dismissed the community control violation.

{¶6} On January 17, 2012, the State moved to revoke Knerr's community control in case 2009 CR 0073. The State alleged the Knerr violated his community control by consuming an alcoholic beverage, misusing 911, failing to keep his supervising officer informed of his residence, testing positive for cocaine and marijuana, and being on a premises where alcohol is served. Knerr admitted to violating the terms of his community control on January 25, 2012. The trial court subsequently sentenced Knerr to a 23-month prison term. On March 15,

2012, the trial court granted Knerr's request for judicial release and imposed a term of five years of supervision.

{¶7} On February 5, 2013, the State moved to revoke Knerr's community control in both cases.[1] The State alleged that Knerr violated his community control by resisting arrest, consuming alcohol, and being present on a premises where alcohol is served. Knerr admitted to the violations and, on October 18, 2013, the trial court imposed five years of community control.[2]

{¶8} On February 19, 2014, the State once again moved to revoke Knerr's community control in both of his cases. The State alleged that Knerr violated the terms of his community control by being present on a premises where alcohol was served, consuming alcohol, associating with a person with a criminal background, and refusing to give a police officer the code to unlock his cell phone.

{¶9} On March 12, 2014, the court held a community control violation hearing where Knerr admitted to violating the terms of his community control.

---

[1] We have referred to the revocation of community control because that is the term used by the trial court and the parties' counsel. However, we recognize that in case 2009 CR 0073 Miller was actually on judicial release pursuant to R.C. 2929.20. Trial courts and attorneys continue to misapply the term community control when actually referring to judicial release. While this may be because community control *sanctions* are imposed when judicial release is granted, judicial release is different from and not synonymous with community control. *See State v. Jones,* 3d Dist. Mercer Nos. 10-07-26, 10-07-27, 2008-Ohio-2117, ¶ 12; *State v. Smith,* 3d Dist. Union No. 14-06-15, 2006-Ohio-5972, ¶ 9-10; *see also State v. Wiley*, 148 Ohio App.3d 82, 2002-Ohio-460, ¶ 11 (9th Dist.) ("Although the language of R.C. 2929.20[(K)] contains the term 'community control' in reference to the status of an offender when granted judicial release, R.C. 2929.15(B) unmistakably includes only those offenders who were initially sentenced to community control.").

[2] Although the trial court repeatedly imposed five-year terms of supervision in each case, the statutes are clear that only a total term of five years is authorized. Therefore, the new terms did not extend supervision beyond that which was originally imposed. R.C. 2929.15(A)(1), (B)(1)(a), and R.C. 2929.20(K).

After Knerr's admission, his attorney moved for a continuance so Knerr's psychologist, Dr. Delong, could finish a report on Knerr's alcohol dependency. The trial court denied Knerr's request for a continuance and proceeded to sentencing that day.

{¶10} At the sentencing hearing, Knerr testified that he has been contacted by the Drug Task Force at least 10 times to do controlled drug buys. During the time he was doing controlled drug buys for the Drug Task Force, he was on community control and struggling with alcoholism. Knerr stated that he has never had any training on the effects of alcohol. While at the Western Ohio Regional Treatment and Habilitation ("WORTH") Center, he received counseling on alcohol, but it was in a group setting. Knerr also testified that he participated in Celebrate Recovery classes at the WORTH Center. However, once he was released, he did not continue to go to those classes. The trial court then had the following exchange with Knerr:

> Q: Do you remember undergoing counseling and treatment [at Central Ohio Youth Center ("COYC")]?
>
> A: Yes, Your Honor.
>
> Q: Do you remember participating in Flight group?
>
> A: Yes, Your Honor.
>
> Q: Do you remember disclosing at that time in counseling your childhood trauma and that was discussed with you and members of your family then?

A: No, Your Honor. I've never spoke about some of those situations.

Q: This is from reports from your juvenile record. "The Defendant then shared his being molested as a child." That's what you're talking about, right?

A: That, yes, and others.

Q: What else?

A: It kind of goes in line with that.

Q: Okay. So you shared that. That was with your family, along with your alcoholism and drug abuse and the family was aware, certainly by the end of that counseling, because they were already aware of your alcoholism but they were also made aware of your drug abuse and also your victimization as a young child; right?

A: Yes, Your Honor.

Q: So you knew about this and knew of your problems and knew that that was a contributing factor to your problems from the time you were a juvenile on. Certainly from the time that you participated in that Flight group back in, -what year was it, '08? When were you there, '07?

A: I was very young, so… I think I was seventeen (17). It would have been seven (7) years ago.

March 12, 2014 Tr., p. 28-29. Knerr then admitted that after being arrested for his most current community control violation, he had asked his probation officer if he could work for the Drug Task Force again in order to reduce his sentence.

{¶11} In case 2009 CR 0073, the court reimposed Knerr's sentences of a 12-month prison sentence on count one and an 11-month prison sentence on count

two, to be served consecutively. As to case 2011 CR 183, the trial court sentenced Knerr to a five-year term of community control.[3]

{¶12} Knerr timely appealed these judgments, presenting the following assignments of error.

### Assignment of Error No. I

**THE TRIAL COURT ERRED BY FAILING TO BIFURCATE HIS COMMUNITY CONTROLR [SIC] REVOCATION HEARING PURSUANT TO GAGNON V SCARPELLI (1973) 411 U.S, [SIC] 778.**

### Assignment of Error No. II

**APPELLANT WAS ENTICED AND ENTRAPED INTO VIOLATING HIS PROBATION BY WORKING FOR THE DRUG TASK FORCE.**

### Assignment of Error No. I

{¶13} In his first assignment of error, Knerr argues that the trial court erred by failing to bifurcate his community control revocation hearing. Specifically, Knerr contends that by not bifurcating his hearing, his psychologist was unable to finish his report on Knerr. The report would have explained that Knerr was an alcoholic and would have provided mitigation at the sentencing hearing. We disagree.

---

[3] The trial court's entry on case 2011 CR 183 reads as though it is a new sentence, however, it was actually a continuation of Knerr's community control. As previously noted, the trial court has no authority to extend community control supervision beyond one maximum five-year term.

**{¶14}** "A defendant under community control is entitled to both a preliminary and a final revocation hearing." *State v. Kiser*, 5th Dist. Tuscarawas, No. 2008 AP 030014, 2009-Ohio-1337, ¶ 12, citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782, 93 S.Ct. 1756 (1973). The purpose of the preliminary hearing is to determine if probable cause exists to believe the defendant has violated the terms of his probation or community control. *State v. Delaney*, 11 Ohio St.3d 231, 233 (1984). Therefore, the preliminary hearing protects a defendant from being unjustly incarcerated pending a final determination as to whether his community control should be revoked. *Id.* The purpose of the final revocation hearing is to give the defendant "an opportunity to be heard and to show" that he either did not violate his conditions or that certain mitigating circumstances "suggest that the violation does not warrant revocation." *Morrissey v. Brewer*, 408 U.S. 471, 488, 92 S.Ct. 2593 (1972). This court has repeatedly stated that "the judgment of a trial court revoking probation or community control sanctions will not be reversed where two separate hearings have not been held unless it appears from the record that the defendant was prejudiced * * *." *State v. Osborn*, 3d Dist. Marion No. 9-2000-107, 2001 WL 719579, *1 (June 26, 2001); *State v. Stokes*, 3d Dist. Union No. 14-98-53, 1999 WL 446087, *6 (June 17, 1999); *State v. Miller*, 45 Ohio App.2d 301, 306 (3d Dist.1975).

{¶15} On appeal, Knerr argues that without Dr. Delong's report, there was little mitigation presented at the hearing, and thus, he was prejudiced. We find this argument unconvincing. Knerr was able to testify as to his alcoholism and how it impacted his behavior. He also testified that Dr. Delong told him that he abuses alcohol to treat his underlying pain caused from childhood abuse. Thus, Knerr was not prejudiced because he was able to testify as to his alcoholism and also testify as to some of Dr. Delong's conclusions. Moreover, Knerr's pre-sentence investigation report also detailed Knerr's long history of alcohol abuse, starting at when Knerr was only 12-years old.

{¶16} Further, it is clear that the trial court took into consideration Knerr's struggle with alcoholism, but decided to give it little weight. Knerr knew he had alcohol and narcotic problems since he was a juvenile, yet continually declined to do anything to treat his problem. Knerr participated in F.L.I.G.H.T. Group[4] at COYC, where he shared with his family and counselors his alcohol and drug problems as well as his experience being molested as a young child. As an adult at the WORTH Center, Knerr attended Celebrate Recovery classes. After his exit from the WORTH Center, Knerr decided not to attend classes anymore, despite being aware of the existence of Celebrate Recovery groups in his area. In Knerr's motion for judicial release, Knerr recognized that he had an alcohol and substance

---

[4] F.L.I.G.H.T. stands for "Families Learning to Inspire Growth and Healthiness Together."

abuse program and promised to attend "Church, AA and NA, and celebrate recovery!" (Docket No. 165, p. 4).

**{¶17}** While we note that a trial judge "should take into consideration all factors, including physical and mental examinations, in the reevaluation and reassessment of the correctness of the sentence upon a revocation of community control," *State v. Wolfe*, 5th Dist. Stark No. 2008-CA-00064, 2009-Ohio-830, ¶ 31, we cannot say that Knerr was prejudiced by the trial court's refusal to grant him a continuance. Knerr has been aware of his alcohol problems for several years and has been given numerous chances for rehabilitation and squanders each opportunity. The trial court is under no such obligation to extend yet another attempt at treatment. *Id.*

**{¶18}** Accordingly, we overrule Knerr's first assignment of error.

*Assignment of Error No. II*

**{¶19}** In his second assignment of error, Knerr argues that he was enticed and entrapped into violating his probation by working for the Drug Task Force. We are unsure what Knerr is arguing in this assignment of error. For example, is Knerr arguing that because he was entrapped, this constitutes an affirmative defense to his community control violation and the trial court could not have accepted his admission? Or is he contending that because he was entrapped, this should have been considered as mitigation? Regardless of what Knerr is arguing

in this assignment of error, this claim was not litigated in the trial court, and therefore, we will not address it on appeal. *See State v. Peagler*, 76 Ohio St.3d 496, 501 (1996) ("A court of appeals cannot consider the issue for the first time without the trial court having had an opportunity to address the issue.").

{¶20} Accordingly, we overrule Knerr's second assignment of error.

{¶21} Having found no error prejudicial to Knerr in the particulars assigned and argued, we affirm the trial court's judgments.

***Judgments Affirmed***

**WILLAMOWSKI, P.J. and PRESTON, J., concur.**

**/jlr**