[Cite as *State v. Bonner*, 2021-Ohio-56.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT


STATE OF OHIO

     Plaintiff-Appellee

-vs-

KOREY KESEAN BONNER

     Defendant-Appellant

JUDGES:
Hon. W. Scott Gwin, P. J.
Hon. John W. Wise, J.
Hon. Patricia A. Delaney, J.

Case No. 2019 CA 00025


O P I N I O N



| | |
|---|---|
| CHARACTER OF PROCEEDING: | Criminal Appeal from the Court of Common Pleas, Case No. 2017 CR 0137 |
| JUDGMENT: | Affirmed in Part; Reversed in Part and Remanded |
| DATE OF JUDGMENT ENTRY: | January 13, 2021 |


APPEARANCES:

For Plaintiff-Appellee

R. KYLE WITT
PROSECUTING ATTORNEY
DARCY T. COOK
ASSISTANT PROSECUTOR
239 West Main Street, Suite 101
Lancaster, Ohio 43130

For Defendant-Appellant

SCOTT P. WOOD
CONRAD/WOOD
120 East Main Street
Suite 200
Lancaster, Ohio 43130

*Wise, J.*

**{¶1}** Appellant Korey Kesean Bonner appeals his conviction and sentence on two counts of gross sexual imposition entered in the Fairfield County Court of Common Pleas following a jury trial.

**{¶2}** Appellee is State of Ohio.

## STATEMENT OF THE FACTS AND CASE

**{¶3}** On January 25, 2018, Appellant Korey Kesean Bonner was indicted with one count of Rape, a felony of the first degree, in violation of R.C. §2907.02(A)(1)(b) & (B), and two counts of Gross Sexual Imposition, both felonies of the third-degree, in violation of R.C. §2907.05(A)(4) & (C)(2), for alleged conduct that occurred with a minor child between April 1, 2017 through September 10, 2017.

**{¶4}** Appellant pled not guilty to the charges.

**{¶5}** On December 13, 2018, Appellant filed a motion for funding and appointment of a DNA expert.

**{¶6}** By Entry filed January 7, 2019, the trial court granted the motion.

**{¶7}** On January 8, 2019, Appellant filed a motion to continue, based on the need for additional time to work with that DNA expert.

**{¶8}** By Entry filed January 22, 2019, the trial court granted the motion to continue.

**{¶9}** On April 5, 2019, the State of Ohio filed a motion *in limine* asking the trial court for a pretrial order permitting the State to introduce testimonial evidence regarding DNA expert Hallie Dreyer's DNA report.

**{¶10}** On April 15, 2019, the trial court held an oral hearing wherein a number of pretrial motions were heard and testimony was presented, including whether the State's DNA expert could testify regarding her findings.

**{¶11}** At this hearing, the State offered the testimony of DNA expert Hallie Dreyer. (Hearing T. at 77–127). Ms. Dreyer testified regarding her qualifications, which included a bachelor's degree in biology and a master's degree in forensic science, as well as her training and job experience, which included having worked as a Forensic Scientist for the Ohio Bureau of Criminal Investigation ("BCI") since January, 2012. (*Id.* at 77-81). She stated that she has testified over 150 times as a forensic scientist and is a member of the American Academy of Forensic Scientists.

**{¶12}** Ms. Dreyer explained how every test run at BCI is peer-reviewed, and that as of a few months prior to this hearing, she knew she had handled DNA tests in over 5,000 cases at BCI. (*Id.* at 80). Ms. Dreyer explained what DNA is, how DNA is treated at BCI, policies and procedures regarding DNA testing at BCI, lab accreditation, and quality assurance. (*Id.* at 81-85).

**{¶13}** Ms. Dreyer explained Y-STR DNA profiling and the tests she ran specific to this case. (Hearing T. at 85-102). Ms. Dreyer explained that there were three potential conclusions that she could make as a result of the Y-STR testing, which were: inclusion, exclusion, and inconclusive. (*Id.* at 95-99).

**{¶14}** Ms. Dreyer explained that in the instant case, the results were inconclusive, which means that Appellant was not excluded, but that pursuant to BCI policy, there was not sufficient quality or quantity of the Y-STR DNA to include him either. (*Id.* at 96).

**{¶15}** Ms. Dreyer explained that BCI has "validated procedures that are performed in our laboratory, and we have procedure-based rules based on that validation that the data must be above a certain threshold [which goes to both quality and quantity] in order for us to be able to make inclusions." (*Id.* at 97). She explained that to include someone's DNA, BCI policy requires a minimum of four (4) locations that match to scientifically conclude that the DNA matches, which is inclusion. *Id.*

**{¶16}** In this case, there were only three (3) locations above the threshold that matched Appellant, and "so it did not meet the minimum criteria for us to make an inclusionary statement for anyone." (*Id.* at 97-99).

**{¶17}** Ms. Dreyer went on to explain that even when there are DNA locations that do not meet the threshold level for inclusion, those loci that are below the threshold can and must be used for exclusion when the DNA samples do not match. (*Id.* at 99-101). And in this case, there were nine (9) locations that did not meet the threshold for inclusion, but still matched Appellant; therefore, Appellant was not excluded. (*Id.* at 100-103).

**{¶18}** At the hearing, the court admitted into evidence Ms. Dreyer's Curriculum Vitae and three DNA reports. At the end of the hearing, the trial court took the motion under advisement. (Hearing T. at 139).

**{¶19}** The case proceeded to jury trial beginning April 16, 2019. Prior to opening statements, the prosecutor asked the trial court on the record about her opening statement, having to do with several pretrial motions, including whether her planned remarks regarding DNA Expert Hallie Dreyer would be allowed. (Trial T. at 245-250). At that point, the trial court put on the record what had been discussed off the record in

chambers, namely its decision regarding the State's motion *in limine* to allow DNA expert testimony. (*Id.* at 249-250). Counsel for Appellant did not renew the objection. *Id.*

**{¶20}** When Appellee called DNA expert Hallie Dreyer to the stand during the jury trial, Appellant did not object. Rather, Counsel for Appellant stipulated to Ms. Dreyer's qualifications, stating: "Your Honor, for purposes of this witness, the defense is willing to stipulate to her qualifications and deem her as an expert to answer questions posed by the Prosecutor." (Trial T. at 765-766). Counsel for the State accepted that stipulation and the court asked the jury to take note of it. (*Id.* at 766).

**{¶21}** Appellant did not object to Ms. Dreyer's testimony and cross-examined her on the DNA issues. (*Id.* at 766-821).

**{¶22}** At the close of the trial, the trial court provided the following jury instruction regarding expert testimony:

> Concerning the weight of expert testimony: As with other witnesses, on you alone rests the duty of deciding what weight to give to the testimony of the experts. In deciding its weight, consider their skill, experience, knowledge, veracity, familiarity with the facts of the case, and the usual rules for testing credibility and deciding the weight to give to the testimony.

**{¶23}** *Id.* at 935-936.

**{¶24}** The trial court also provided jury instructions regarding expert witness and hypothetical questions, which included that the jury was to determine whether the facts inferred in the questions were true. (*Id.* at 936-937).

**{¶25}** Following deliberations, the jury returned a verdict of not guilty as to the Rape count but guilty as to the two counts of Gross Sexual Imposition.

**{¶26}** On April 29, 2019, the trial court sentenced Appellant to sixty (60) months incarceration in a state penal institution for one count of gross sexual imposition and, consecutive to that, sentenced to 5 years of community control on the second count of gross sexual imposition.

**{¶27}** Appellant now appeals, assigning the following errors for review:

**ASSIGNMENTS OF ERROR**

**{¶28}** "I. THE TRIAL COURT ERRED IN PERMITTING THE STATE'S DNA EXPERT TO TESTIFY.

**{¶29}** "II. THE TRIAL COURT ERRED IN SENTENCING APPELLANT."

**I.**

**{¶30}** In his first assignment of error, Appellant argues the trial court erred in permitting the State's DNA expert to testify. We disagree.

**{¶31}** More specifically, Appellant argues the trial court erred in allowing the expert to testify regarding her DNA findings from the victim's underwear and whether Defendant's DNA was present.

**{¶32}** "[A] trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271, 569 N.E.2d 1056 (1991).

**{¶33}** An abuse of discretion exists where the reasons given by the court for its action are clearly untenable, legally incorrect, or amount to a denial of justice, or where the judgment reaches an end or purpose not justified by reason and the evidence. *Tennant v. Gallick,* 9th Dist. Summit No. 26827, 2014-Ohio-477, ¶35; In *re Guardianship*

*of S.H.*, 9th Dist. Medina No. 13CA0066-M, 2013-Ohio-4380, ¶ 9; *State v. Firouzmandi,*

5th Dist. Licking No. 2006-CA-41, 2006-Ohio-5823, ¶54.

**{¶34}** Here, at trial, the State's DNA expert testified regarding her findings of the

DNA profile associated with the front panel crotch of the victim's underwear. (Trial T. at

761).

**{¶35}** Ms. Dreyer explained that the techniques used for Y-STR DNA testing are

the same principles and methods as normal DNA testing, and that the same tools,

reagents, and equipment are employed. (Trial T. at 786-787, 802). The only difference is

that Y-STR DNA testing focuses on a specific portion of the DNA, that being the Y-

chromosome, rather than all the chromosomes looked at in traditional DNA testing. (Trial

T. at 786-789).   She also testified that the Y-STR DNA testing can detect and identify

smaller DNA samples and/or male DNA mixed with female DNA, but it is limited in that it

can only identify male lineage, not one particular individual. (Trial T. at 786-789, 804-805).

**{¶36}** Ms. Dreyer stated that, pursuant to BCI policy, based on the results of her

testing she could reach one of three conclusions: (1) the profile includes the person; (2)

the profile excludes the person; and (3) the profile is inconclusive. (Trial T. at 792-801,

815).

**{¶37}** Ms. Dreyer stated that, in this case, the Y-STR DNA results could neither

include nor exclude the Appellant. (Trial T. at 793-795, 799-800, 809-815).

**{¶38}** Ms. Dreyer explained that the threshold requirements for the first two

categories, inclusion and exclusion, are different and that these threshold differences are

established by BCI policy. (Trial T. at 792-799, 806).   She further explained that this

threshold requirement is set for the inclusion category only.  (Trial T. at 800-801). This

threshold requirement, as set by BCI policy, is that four (4) loci must match above the threshold to include a person in the profile. (Trial T. at 792-801). Here, only three loci were found to match the Appellant.  Therefore Appellant was not included in the profile. (Trial T. at 798, 800).

{¶39}  She went on to explain that for exclusion, BCI policy establishes that there is no threshold (quantity or quality) required because if any part of that profile, no matter how small, does *not* match, the conclusion must exclude the person. (Trial T. at 800-801). She stated that in this case, there were a total of nine loci that could have been used for exclusion but because all of those matched, Appellant could not be excluded either. (Trial T. at 798-801).

{¶40}  She further explained that when a person can neither be included nor excluded, then the remaining conclusion, as set by BCI policy, is the third category, which is inconclusive, which is what she found in this case. (Trial T. at 793-795, 799-800, 809-815).

{¶41}  Relevant evidence, according to Evid.R. 401, is that evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401.

{¶42}   As a general rule, all relevant evidence is admissible. Evid.R. 402. Our task is to look at the totality of the circumstances in the case *sub judice* and determine whether the trial court acted unreasonably, arbitrarily or unconscionably in allowing or excluding the disputed evidence. *State v. Oman,* 5th Dist. Stark No. 1999CA00027, 2000 WL 222190.

**{¶43}** "An exception to the general rule is that relevant evidence is inadmissible if its probative value is 'substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.' Evid.R. 403(A) .

**{¶44}** Upon review, while we do not find that the admission of the DNA evidence was error, we do find that the expert's testimony regarding having found only 3 of 4 loci in the instant case which led her to find the results to be inconclusive could have caused some confusion among the jury, possibly allowing for speculation that because 3 loci were present, that it might be a close call.

**{¶45}** However, we find any error in the admission of such testimony to be harmless. Here, the record reflects Appellant was able to reinforce during cross-examination that said results were inconclusive and, therefore, did not advance the State's case. Given this opportunity to explain to the jury the irrelevance of the DNA test results, we find Appellant's argument that the jury was automatically prejudiced is not supported by the record and without merit.

**{¶46}** Additionally, the trial court instructed the jury with regard to expert testimony and its ability to determine credibility and the weight to be given to the testimony.

**{¶47}** The jury was free to reject the DNA evidence if it concluded that the evidence was unreliable or misleading." *State v. Pierce*, 64 Ohio St.3d 490, 501.

**{¶48}** Because said DNA test result was "inconclusive", Appellant is unable to demonstrate he was prejudiced by the admission of said evidence. In the absence of any demonstration of prejudice, we find any error in the admission of this evidence to be harmless at best.

**{¶49}** Further, even without the introduction of the DNA evidence, we find that there was sufficient evidence to convict Appellant of gross sexual imposition. The minor victim in this case testified that Appellant touched the inside of her vagina on one occasion and on two other occasions he touched her on the outside of her vagina. (Trial T. at 477, 478-489, 490-499). The victim's testimony alone was legally sufficient to support the convictions for gross sexual imposition in this case.

**{¶50}** We therefore find Appellant's first assignment of error is overruled.

**II.**

**{¶51}** In his second assignment of error, Appellant argues the trial court erred in sentencing. We agree.

**{¶52}** Specifically, Appellant argues the trial court erred in sentencing him to community control sanctions to be served consecutive to a term of prison.

**{¶53}** Here, the trial court sentenced Appellant to sixty (60) months incarceration consecutive to five (5) years of community control.

**{¶54}** We begin by noting that Appellee concedes the trial court erred in sentencing Appellant to a term of community control to be served consecutively to a term of imprisonment.

**{¶55}** This Court has previously approved sentences in which a trial court imposed community control consecutive to a prison term. In *State v. Hitchcock*, we determined that in a case in which a defendant is sentenced on three separate counts, a trial court may impose two sixty-month prison terms, consecutive to each other (Counts I and II), and consecutive to a term of community control (Count III). 5th Dist. Fairfield No. 16-CA-41, 2017-Ohio-8255, appeal accepted, 152 Ohio St.3d 1405, 2018-Ohio-723, 92 N.E.3d 877.

*See also*, *State v. Williams*, 5th Dist. Fairfield No. 17-CA-43, 2018-Ohio-4580, ¶ 22, motion to certify allowed, 154 Ohio St.3d 1519, 2019-Ohio-768, 118 N.E.3d 257.

**{¶56}** The Ohio Supreme Court has now overruled our decision, determining as follows in *State v. Hitchcock*, 157 Ohio St.3d 215, 2019-Ohio-3246, 134 N.E.3d 164, at ¶ 24:

> Because no provision of the Revised Code authorizes trial courts to impose community-control sanctions on one felony count to be served consecutively to a prison term imposed on another felony count, we must conclude that trial courts may not do so. We accordingly * * * conclude that unless otherwise authorized by statute, a trial court may not impose community-control sanctions on one felony count to be served consecutively to a prison term imposed on another felony count.

**{¶57}** Therefore, we conclude that in the instant case, the trial court was not authorized to impose a term of community control consecutive to a term of imprisonment. Appellant's sentences are reversed and vacated, and this matter is remanded to the trial court for further proceedings.

**{¶58}** Appellant's second assignment of error is therefore sustained.

{¶59} Accordingly, the judgment of the Court of Common Pleas, Fairfield County, Ohio, is affirmed in part, reversed in part and remanded for further proceedings consistent with the law and this opinion.

By: Wise, J.

Gwin, P. J., and

Delaney, J., concur.

JWW/kw 0111